This is an appeal from an order fixing the inheritance tax in the matter of the Estate of Louis H. Fligman, deceased. The district judge found that three annuity contracts issued by certain life insurance companies authorized to do business in Montana, and which contracts were appraised in the aggregate amount of $26,975.15, "constitute insurance within the meaning of the inheritance tax laws of Montana * * * and therefore are exempt from imposition of inheritance tax." From this conclusion of the district court the board of equalization appealed. The facts are not in dispute.
The sole question presented for our determination is as to[1] whether or not these annuity contracts are insurance. Counsel for the board of equalization relies upon the wording of section 10400.1, Revised Codes, which in effect exempts from operation of inheritance tax laws "insurance payable upon thedeath of any person" except such amount as is in excess of fifty thousand dollars ($50,000). Counsel's contention is that annuity contracts involved here do not constitute contracts payable upon death of the insured and are not, therefore, "insurance" within the meaning of section 10400.1, but are the proceeds of annuity contracts, and clearly taxable since they were transfers of property of the class specified in subdivision 3 of section 10400.1.
Counsel has cited numerous cases from various jurisdictions sustaining his contention that an annuity contract issued by a life insurance company is not insurance. Many well reasoned opinions are cited by the defendant to the contrary. While there may be a preponderance of authority in favor of the *Page 507 
contentions of the counsel for the state board, our statutes compel a contrary conclusion.
Subdivision 7 of section 10400.1, Revised Codes, reads in part as follows: "All insurance payable upon the death of any person over and above fifty thousand dollars ($50,000.00), shall be deemed a part of the property and estate passing to the person or persons entitled to receive the same * * *." The clause "payable upon the death" etc., tends to sustain the position of the state board, but section 6111, Revised Codes, appears to us to be to the contrary. It provides:
"Corporations, associations, and societies, organized to do the following-described business, are insurance corporations within the meaning of this Act: * * *
"2. To insure the lives and health of persons, and to grant, purchase, or dispose of annuities."
This statute conflicts with the board's contention, and furthermore the practices heretofore followed by the state auditor and insurance commissioner in collecting licenses from insurance companies are not in accord with the position of the state board.
Section 6112 provides:
"All insurance corporations, associations, and societies, as hereinbefore specified in the preceding section, before commencing to do business in the state of Montana, shall be required to secure a license, authorizing them to transact business of insurance corporations, associations, or societies, and shall pay to the state auditor, for such license, the following fees:
"For a license to collect in any one year premiums amounting to five thousand dollars or less, one hundred and twenty-five dollars.
"For a license to collect in any one year premiums over the sum of five thousand dollars, the sum of twenty dollars for each and every one thousand dollars to be so collected; * * *."
It clearly appears from that part of section 6111, supra, that whenever insurance companies are admitted to do business in the state of Montana, they have the same right to issue contracts *Page 508 
for annuities and deal in them the same as they have to issue policies of insurance on the lives and health of persons. It appears to us that this statutory provision makes no distinction between annuities and ordinary life policies. There are two facts that emphasize this conclusion:
1. The commissioner of insurance of the state of Montana bases the license fee provided for by section 6112, supra, on allpremiums collected by the particular insurance company, irrespective of whether such premiums are collected by the insurance company on what is ordinarily termed life insurance policies or are on premiums paid for annuities, making no distinction between the two. It is our opinion that no distinction can be made between these annuity contracts and the meaning of the term "insurance" as referred to in section 6111, supra. However, the meaning of the statute is not as specific as it might be desired.
2. If annuities are not to be classed insurance, as we have indicated we think is done by Chapter 27 of which sections 6111 and 6112 are a part, we think they would logically come under the provisions of Chapter 316 relating to "Regulation of stock-brokers and investment companies," a chapter of our laws usually referred to as "blue sky laws" and so designated in the Code in parenthesis under the title above quoted. Section 4028 of Chapter 316, however, expressly excludes annuities from its provisions, as appears by these words: "The provisions of this Act shall not apply to the following securities: * * * 4. Policy contracts of insurance companies licensed to do business in this state."
In a summary of these different statutory provisions we see that section 6111 expressly authorizes life insurance companies to insure the lives and health of persons and to likewise "grant, purchase, or dispose of annuities." By virtue of subdivision 3 of section 10532, Revised Codes, we take judicial notice of the fact that under section 6112 the office of state auditor and insurance commissioner includes the premiums or payments for annuities along with the premiums collected for all other *Page 509 
kinds of life insurance in fixing the amount of the license that any particular life insurance company shall pay before it may obtain its annual license to do business in the state. Then we find that section 4028 expressly exempts "policy contracts" of life insurance companies from the provisions of the "blue sky" or securities Act, and we think these statutes show legislative intent to classify annuities along with other life insurance. We have nothing to show any contrary legislative intent except section 10400.1, and we do not think there is anything in that section nor in the general provisions of our statutes relating to life insurance that clearly repudiates the propriety of classifying annuities as insurance. There are well reasoned cases cited from other jurisdictions on either side of the question, but we think the case at bar must be determined by the construction of our own statutes. The question is new in this jurisdiction. We think our statutes rather clearly show that annuity contracts must be classified under the general heading of insurance, and that the decision of the district court must be affirmed.
We are satisfied that the particular annuity contracts involved here, irrespective of how they should be classed generally, must be held to be insurance for the reason that on the death of the annuitant the balance due is payable to a beneficiary named in the contract and thus are not materially different from a specific life insurance contract. The "twenty-year endowment" insurance contract is a popular form, and on maturity the insured under most such contracts may choose one of a number of specified modes of settlement, amongst the number, one may have the value of the contract payable in annual installments to himself. It is not unusual, moreover, to have any balance due at the death of the insured payable to the beneficiary and the distinction between such policies and a specific annuity contract is not broad enough to classify one as insurance and place the other under a different category so far as our revenue laws are concerned. Furthermore, if the insured dies during the twenty years, the entire sum is *Page 510 
payable to the beneficiary as life insurance. In that event it could not be contended that the twenty-year endowment policy was not an insurance contract. This emphasizes the material point here which is that so far as the beneficiary is concerned, whatever she receives from the life insurance company under either policy is life insurance on the insured's life, although what he himself may or might have received would have been as annuity or endowment proceeds. In other words, any of these contracts, in so far as it results in payment to the beneficiary upon the death of the insured, to that extent is an insurance policy and such proceeds subject to the statutory exemption from inheritance tax.
The fact that the state auditor and insurance commissioner includes moneys paid for annuities along with all other premiums on life insurance policies in arriving at a basis for computing the license tax has no little weight in bringing us to the conclusion announced. We are of the opinion that there is nothing to support a legislative intent to direct that annuities be classed as insurance when the license tax is computed under section 6112, and given a different classification under the inheritance tax statutes. The fact that the insurance commissioner, in fixing the amount of the annual license of the various life insurance companies operating in the state, has made no distinction between premiums collected on the two kinds of contract, and the position of the board of equalization in the case at bar, presents a conflict in law enforcement between two divisions of the executive department. Finally we think any possible question of legislative intent is set at rest by section 8158, Revised Codes, which provides: "An insurance on life may be made payable on the death of the person, or on his surviving a specified period, or periodically so long as he shall live, or otherwise contingently on the continuance or determination of life."
The judgment is affirmed. *Page 511 
MR. CHIEF JUSTICE JOHNSON and MR. JUSTICE ANDERSON concur.