**BLUM v. HIGGINS, Collector of Internal Revenue.**

District Court, S. D. New York.

Aug. 29, 1944.

Proskauer, Rose & Paskus, of New York City (Normán S. Goetz, Wilbur H. Friedman, and Jerome J. Dick, all of New York City, of counsel), for plaintiff.

Mathias F. Correa, U. S. Atty., of New York City, (Arnold C. Stream, of New York City, of counsel), for defendant.

BRIGHT, District Judge.

This suit is to recover a refund of income taxes paid by plaintiff in part upon the difference between the face amount of two endowment policies of life insurance, which matured in 1936, and the total premiums paid thereon.

The facts are stipulated. On August 4, 1921, the two policies were issued to plaintiff upon his life and they matured on August 4, 1936, in the sum of $150,000. During their term he paid $133,723.50 in premiums. He reported the excess—$16,276.50—in his return for 1936, and paid his tax thereon and upon his other income in 1937. On February 20, 1940, he filed a claim for refund in the sum of $10,293.01 with interest, in which he contended that the excess was improperly included in his return because (1) he had not received it; (2) it was not constructively received for the reason that withdrawal of the proceeds of the two policies at the time would have required the surrender (a) of a guaranteed return of 3% on the matured value of the policies with such dividends as the company might declare, and (b) the right to convert the policies into annuities payable over the life of the insured or for a specified period; in other words, the surrender of substantial rights. As an alternative claim, he contended that the excess would be taxable only as capital gain and not as ordinary income. The claim was disallowed and this action followed.

Each policy was payable to "such beneficiary as may hereafter be designated under this contract, if any," and provided, when the policy became payable:

"The Insured shall have the right, with the privilege of revocation and change, to elect in lieu of payment in one sum, either Option 'A', 'B', or 'C', or that the amount payable be distributed under two or more of said options. * * *"

"Option A: To have the whole or any part not less than $1,000 of the net proceeds of this Policy at the death of the Insured, if within the Endowment Period, retained by the Company until the death of the last surviving Beneficiary or Contingent Beneficiary, the Company in the meantime to pay interest thereon annually at the rate of three per cent. of the amount so retained, the first payment being due one year after the death of the Insured. At the time any interest payment becomes due, the Beneficiary, provided the Company shall not have been specifically directed to the contrary by the Insured, shall have the right upon due surrender of this policy, to withdraw the amount so retained."

"Option B: To have the whole or any part not less than $1,000 of the net proceeds of this Policy at the death of the Insured, if within the Endowment Period, paid in a specified number of annual installments. * * * At any time when an installment is due, the Beneficiary, provided the Company shall not have been specifically directed to the contrary by the Insured, shall have the right upon due surrender of this Policy, to commute the installments remaining unpaid on the basis of three per cent. compound interest."

"Option C: To have the whole or any part not less than $1,000 of the next proceeds of this Policy at the death of the insured, if within the Endowment Period, paid in either 10, 15, 20 or 25 stipulated annual installments * * *. Payments under Option 'C' are not subject to commutation. * * *"

"All payments under Options 'A' and 'B', and the stipulated payments under Option 'C', will be increased by such annual dividends as may be apportioned by the Company. * * *"

"The foregoing Special Provision shall also apply to payment at the end of the Endowment Period when, subject to the provisions thereof, the Insured may elect in lieu of payment in one sum, either Option 'A', 'B', or 'C', or that the amount payable be distributed under said options, and may himself be the Beneficiary * * *"

On July 30, 1936, five days before the maturity date of the policies, plaintiff

named himself as beneficiary at the expiration of the endowment period, and elected that settlement be made with him in accordance with the provisions of Option A, so modified that payment should be made monthly at the minimum rate of $2.47 per $1,000 of the amount retained, "with privilege of surrender and withdrawal of principal and interest in whole or in part. * * * I reserve the right to change or revoke the foregoing."

In accordance with that election the policies were endorsed:'

"August 4, 1936. Henry L. Blum, the insured, has survived the endowment period and on his nomination is designated as beneficiary. Settlement of $150,000 * * * shall be made with the beneficiary, in accordance with the provisions of Option A * * * at the minimum rate of $2.47 per $1,000 of the amount so retained, the first payment being due September 4, 1936, with privilege of withdrawal of principal in whole or in part. * * * All interest payments will be subject to increase by such dividends as may be apportioned by the Company. The right to change or revoke the foregoing is reserved to the beneficiary."

It is further stipulated that the excess was not received in 1936, that plaintiff, because of his health, was not insurable at the date of maturity, and that neither there nor at any time since could he have procured insurance with such favorable conditions and privileges as in those in question, or which would pay as high a rate of return per month or as an annuity, or which would permit him to participate in dividends and excess earnings along with monthly and annuity payments, or, in fact, any annuity contract for the amounts specified in those in question.

The sole questions to be decided are whether or not the excess of maturity value over premium cost was taxable to plaintiff for 1936 on the theory of constructive receipt; if not plaintiff is entitled to recover,—if it was, whether it is taxable as ordinary income or as capital gain.

Section 22(b) (2) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Code, § 22(b) (2), provides that there shall not be included in gross income and exempt from taxation "amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid * * * then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity * * * until the aggregate amount excluded from gross income * * * equals the aggregate premiums or consideration paid for such annuity."

Article 42—2 of Treasury Regulations 94 under that Act provides, on the subject of constructive receipt:

"Income not reduced to possession.—Income which is credited to the account of or set apart for a taxpayer, and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him, so that it may be drawn at any time, and its receipt brought within his own control and disposition."

The payments under Option A are not annuity payments. It is not otherwise contended. The general principle is well established that income may be taxed which is subject to the taxpayer's unfettered action and which he is free to enjoy at his own option. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed 731; Helvering v. Gordon, 8 Cir., 87 F.2d 663, 667; Loose v. United States, 8 Cir., 74 F.2d 147, 150; Webb v. Commissioner, 2 Cir., 67 F.2d 859, 860; Frackelton v. Commissioner, 46 B.T.A. 883, 894; Griffiths v. Commissioner, 308 U.S. 355, 357, 60 S.Ct. 277, 84 L.Ed. 319; Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 77 L.Ed. 1439.

Article 42—2 clearly is to the same effect. It makes taxable income not withdrawn where the income is credited without any substantial limitation or restriction as to time or manner of payment or condition upon which payment is to be made—where it must be made available to him so that it may be drawn at any time. The proceeds of these policies were payable on August 4, 1936, without any limitation or restriction; there was no condition upon which they should be paid; and their receipt was entirely within plaintiff's control and disposition. Whatever limitation or restriction there was as to time or manner of payment was created by plaintiff for his own benefit, unfettered by any words in the policies.

It seems well settled that he is taxable on such income as he may enjoy, not upon what he voluntarily sees fit not to receive. He could have received the full value of these policies, but for his own act, at maturity and could have done with it as he saw fit. He considered it more favorable for his purposes to accept interest and dividends upon the amount. In other words, he chose the manner in which his property should be invested and the return he would get from it. He would have substantially the same rights in other forms of investment. And as I read his policies, and the terms of his election, he still retains these rights; he expressly reserved the right to "change or revoke" his election of July 30, 1936. Under Option "A" he has the right to withdraw in whole or in part the amount retained on any interest payment date.

I think it must be held that he constructively received the maturity value of the policies in 1936.

The remaining question is whether the excess was ordinary income or capital gain. I do not think that point is ruled by Section 117(f) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Code, § 117(f) as contended by plaintiff. It was not received upon the retirement of the insurance policies, or upon any sale or exchange. That section contemplated receipt under instruments which gave no option to the holder whether he should receive or not. He had but to take it. Here his own wish governed the transaction. The cases seem to hold, practically without exception, that the excess is ordinary income. Avery v. Commissioner, 9 Cir., 111 F.2d 19, 23; Bodine v. Commissioner, 3 Cir., 103 F.2d 982, 987, certiorari denied 308 U.S. 576, 60 S.Ct. 92, 84 L.Ed 483.

Judgment will, therefore, go for the defendant with costs.