IN RE HARPER'S ESTATE.

STATE, APPELLANT, v. BOWMAN, RESPONDENT.

No. 8939

Submitted April 12, 1950. Decided May 25, 1950.

218 Pac. (2d) 927

Mr. H. O. Vralstad, Special Asst. Atty. Gen., Mr. Arnold H. Olsen, Atty Gen., Mr. H. D. Carmichael, Asst. Atty. Gen., for appellant. Mr. Vralstad argued orally.

Messrs. Murphy, Garlington and Pauly, Missoula, and Mr. Edmund T. Fritz, Missoula, for respondent. Mr. Fritz argued orally.

MR. JUSTICE METCALF:

The decedent, Catherine Harper, was the insured under three endowment insurance contracts, all of which matured during her lifetime. All three contracts are alike in so far as the question here presented is concerned. One of the policies which will be used as an example matured as an endowment policy on August 30, 1944. Mrs. Harper became entitled to the face value of $10,000 plus $811 accrued dividends. Under the terms of her policy she could be paid in one lump sum or she could exercise any one of four designated optional modes of settlement. She chose to exercise Option 1: "By the Company's holding the proceeds as a principal sum payable at the death of the payee, the Company meanwhile paying monthly interest (with a final interest payment to the date of such death) at three per cent a year plus participation in excess interest at such rate as the Company may determine for each year."

A supplementary contract was issued by the company designating contingent payees to receive the principal sums upon the death of the primary payee; permitting Mrs. Harper to designate other contingent payees in the event of the prior death of the named payees and providing for withdrawal of the fund at Mrs. Harper's pleasure.

Mrs. Harper died on October 19, 1947, and the principal sum of $10,811, together with accrued interest of $44.07 was paid to the contingent payees.

The proceeds of these three supplementary contracts were omitted from the final report and petition to have inheritance tax determined and the state board of equalization objected. The answer of the administratrix asserted that the proceeds were insurance and therefore exempt under R. C. M. 1947, section 91-4406, as interpreted by In re Fligman's Estate, 113 Mont. 505, 129 Pac. (2d) 627.

The trial court overruled the state's objections and issued its order determining tax, refusing to tax the proceeds from the endowment policies. From this order the state has appealed.

The question is whether the proceeds of life insurance policies which have matured as endowments, and which are left with the insurance company at a fixed rate of interest in accordance with one of the optional modes of settlement, are within the insurance exemption of section 91-4406, supra.

This court in Re Fligman's Estate, supra, held that annuity contracts are within the insurance exemption. Counsel for the respondents insist that the supplementary contracts at bar are annuities and therefore under that decision exempt.

However, an examination of the contracts discloses that the Fligman case is not in point.

The Fligman case was concerned with "Single Premium Annuity" contracts. Two of the contracts were "Refund Annuity" contracts. The third was a contract for a life annuity beginning at the age of 65 taken out when the annuitant was 56. Fligman died before he reached the retirement age and the payment to his beneficiaries was under a "death benefit" proviso in the policy.

In the instant case we are concerned with an entirely different contract. In an annuity contract there is a fixed annual return in "periodic payments which represent a combined return of capital and interest." Igleheart v. Commissioner of Internal Revenue, 7 Cir., 174 F. (2d) 605, 607. The "Annuity has as its basic function the systematic liquidation of the principal." Ibid, 174 F. (2d) at page 606, citing Huebner Life Insurance, pp. 154, 155.

A life annuity is based on the life expectancy of the recipient so that if he lives out his expectancy he will receive the entire principal sum plus interest. Each annual payment is partly a return of capital and partly interest on the capital retained.

In the instant case Mrs. Harper receives an annual interest ▮ but the principal sum is unimpaired. No matter what her life expectancy she received a fixed three per cent interest and at her death the named beneficiaries receive the principal intact. There was never a return of any part of the principal invested. The capital was never depleted. The return of some part of the principal investment is the characteristic that distinguishes an interest contract from an annuity contract. Commissioner of Internal Revenue v. Meyer, 6 Cir., 139 F. (2d) 256.

At the time these endowment policies matured Mrs. Harper ▮ could have received the amount in a single sum. She could have withdrawn it and invested it in bonds, put it in a savings account or bought other property. She would have received a greater or less return depending upon the risk. Instead she elected to exercise the option of leaving the entire amount to which she was entitled with the company. The payment for the detention of the money was interest and not an annuity. R. C. M. 947, sec. 47-122; Blum v. Higgins, D. C., 57 F. Supp. 140.

While it is not exactly correct to say that she constructively received the maturity value of the endowment policies, Blum v. Higgins, D. C., 57 F. Supp. 140, 143, the effect after exercising the option of leaving the money with the company on interest is to make an investment at that rate. Blum v. Higgins, 2 Cir., 150 F. (2d) 471, 160 A. L. R. 1093. The life insurance part of the contract is at an end. The primary payee could leave the money with the company indefinitely or she could withdraw it at any time she chose. This is in effect a liquid investment at interest and the equivalent of an equal sum of cash. Blum v. Higgins, 2 Cir., 150 F. (2d) 471, 160 A. L. R. 1093.

Since this was an investment at interest during Mrs. Harper's lifetime and only passed to the named contingent benefici-

aries upon her death, it was a transfer intended to take effect at or after death and should be taxed as such.

The order determining the inheritance tax is reversed and the cause remanded to the district court with directions to include the proceeds of the three supplementary insurance contracts in the decedent's estate and assess the tax accordingly.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN and BOTTOMLY concur.