Matter of the Estate of ALVER LOUIS HAMMERSTROM, also known as A. L. HAMMERSTROM, Deceased. THE STATE OF MONTANA, Appellant, v. ELSIE D. HAMMERSTROM, Executrix of the Estate of Alver Louis Hammerstrom, Deceased, Respondent.

No. 9631.

Submitted January 23, 1958. Decided June 11, 1958.

326 Pac. (2d) 699.

Forrest H. Anderson, Atty. Gen., H. O. Vralsted, Sp. Asst. Atty. Gen., for appellant.

H. O. Vralsted, Sp. Asst. Atty. Gen., argued orally for appellant.

Coleman, Lamey & Crowley, Billings, for respondent.

Arthur F. Lamey, Billings, argued orally for respondent.

THE HON. GEORGE J. ALLEN, District Judge (sitting in place of MR. JUSTICE BOTTOMLY).

This is an appeal by the State of Montana from an order and judgment of the district court of Yellowstone County, Montana, entered in the matter of the Estate of Alver Louis Hammerstrom, deceased, determining the inheritance tax payable on account of his death.

At the time of his death, he was the owner of seven life insurance policies having a combined value of $25,151.92, and also the owner of two annuity policies having a combined value of $9,790.08, being payable upon his death to his wife, Elsie D. Hammerstrom. The value of the two annuity policies was excluded from the gross estate by the district court in determining the inheritance tax due to the State of Montana upon the distributive share of Elsie D. Hammerstrom.

Appellant's position is that, under section 91-4406, R.C.M. 1947, the court erred in excluding the value of the two annuity policies, even though the combined value of the seven life insurance policies and the two annuity policies totaled less than $50,000. R.C.M. 1947, section 91-4406, reads:

"All insurance payable upon the death of any person over and above fifty thousand dollars ($50,000.00), shall be deemed a part of the property and estate passing to the person or persons entitled to receive the same and if payable to more than one person the said fifty thousand dollars ($50,000.00) exemp-

tion shall be prorated between such persons in proportion to the amount of insurance payable to each.''

The sole question presented by this appeal is whether or not the proceeds of the two annuity policies are included in the term "all insurance" as the term is used in section 91-4406, R.C.M. 1947.

In the case of In re Fligman's Estate, 113 Mont. 505, 509, 129 Pac. (2d) 627, 629, this court considered the same question and decided it adversely to the appellant's position, stating, ''There are well reasoned cases cited from other jurisdictions on either side of the question, but we think the case at bar must be determined by the construction of our own statutes. The question is new in this jurisdiction. We think our statutes rather clearly show that annuity contracts must be classified under the general heading of insurance * * *''.

Appellant admits such is the holding of this court in In re Fligman's Estate, supra, but now urges this court to overrule such decision. This court considered precisely such a request by this appellant in In re Coleman's Estate, 132 Mont. 339, 317 Pac. (2d) 880, 883, and refused it stating:

''However, appellant would have this court reverse its holding in In re Fligman's Estate, 113 Mont. 505, 129 Pac. (2d) 627, wherein it was held that annuity proceeds were exempt under R.C.M. 1947, section 91-4406. That case was decided in 1942. Eight legislative sessions have been held since the decision, and the legislature has not seen fit to amend the statute. Estates and property have been planned and settled on the basis of the decision in the Fligman case, and if necessary to this decision, this court would treat that opinion as *stare decisis*.''

With this statement, we are in full accord. Judgment affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE CASTLES, concur.

MR. JUSTICE ANGSTMAN, (specially concurring).

Since I disagreed with the majority opinion in the case of In re Fligman's Estate, 113 Mont. 505, 129 Pac. (2d) 627, I concur in the foregoing opinion solely on the ground of *stare decisis*. The case of In re Harper's Estate, 124 Mont. 52, 218 Pac. (2d) 927, did not reject the holding in the Fligman case as implied in the dissenting opinion of Mr. Justice Adair. The Harper case involved facts entirely different from those here. That case dealt with endowment insurance contracts and not annuities. The contracts had matured during the lifetime of the insured and under the insurance contract the insured had elected to leave the proceeds with the company as an investment at a fixed rate of interest. That was the situation at the time of the death of the insured. The case has nothing to do with the annuity contracts.

MR. JUSTICE ADAIR: (dissenting).

At the date of his death, A. L. Hammerstrom was the owner of two contracts.

*"Deferred Refund Annuity Contract"* One of these contracts was with The Mutual Life Insurance Company of New York. It was designated as "Annuity No. R 28302." It provided that if the annuitant, A. L. Hammerstrom, were to make certain premium payments for a period of twenty-four years, the insurance company would, at the expiration of that period, pay said annuitant, A. L. Hammerstrom, a monthly income of $100 per month for ten years certain and as long thereafter as the annuitant lives. In the alternative the contract provided that if the annuitant dies prior to the maturity date of the contract, the company would pay to the wife of the annuitant, if living, or to his beneficiaries if the wife be not living, the net cash value of the contract at the death of the annuitant. The above type of contract is recognized as a "Deferred Refund Annuity Contract." It is to be noted that this refund provision provides only for the payment of the net cash value of the contract to the beneficiary.

A. L. Hammerstrom died prior to the annuity taking effect,

but after he had paid for some twenty years to the annuity fund. The payment received by the widow was the net cash value of the contract. The contract is so written that this net cash value never exceeds the amount of the premiums paid by the deceased.

*"Deferred Survivorship Annuity Policy"* The second contract was between the decedent, A. L. Hammerstrom and The Penn Mutual Life Insurance Company of Philadelphia. This contract provided that if A. L. Hammerstrom would pay an annual premium, the company would pay his beneficiary, providing the beneficiary should survive A. L. Hammerstrom by twenty years, $40 a month for life. Hammerstrom, by this contract, was never to get anything personally, the only benefit was to his beneficiary if she should live the required period after Hammerstrom's death. If the beneficiary should die before the period of time has elapsed, the policy expires. There is no refund. This type of policy is known as a Deferred Survivorship Annuity Policy.

From the first contract, being the "Deferred Refund Annuity Contract," the widow received the sum of $9,192, the net cash value at that time. This sum did not exceed the amounts previously paid on the contract. Nothing was received from the second contract and by its provisions nothing will be paid until twenty years after the date of death of A. L. Hammerstrom. This possibility of receipt of benefits was valued at $589.08.

In determining inheritance tax, the above two contracts were not included in the decedent's gross estate. The State of Montana objected to such omission anl alleged that these contracts constituted taxable assets of Hammerstrom's estate.

The estate resisted this objection and asserted the proceeds and value of the contracts constituted a portion of the "insurance part of the estate," did not exceed $50,000, and thus were not taxable. The district court sustained the position of the estate and the State of Montana brought this appeal from that decision.

The only question presented on the appeal is whether or not the proceeds received, and the benefits acquired from these contracts, are exempt from the inheritance tax because they constitute *"insurance payable* upon the death of any person."

It is urged that this question was decided adversely to the State's contention here in the case of In re Fligman's Estate, 113 Mont. 505, 129 Pac. (2d) 627. It is also urged that the Fligman case is here controlling under the doctrine of *stare decisis.* These contentions are lacking in merit in view of this court's later holding concerning these same issues in the case of In re Harper's Estate, 124 Mont. 52, 218 Pac. (2d) 927, wherein this court rejected the entire foundation upon which its ruling in the Fligman case was based. Although the opinion in the Harper case, supra, did not specifically overrule the holding in the Fligman case, yet the legal effect of this court's ruling in the Harper case was to wholly abolish the Fligman doctrine.

In the Fligman case it was held that proceeds received, by reason of the death of Fligman, from certain contracts designated annuity contracts were exempt from inheritance tax by reason of the provisions of R.C.M. 1947, section 91-4406. The foundation for such holding was (a) the insurance laws taxed insurance companies on premiums collected from the sale of annuity contracts the same as they taxed the premium on the sale of life insurance, and that by so doing the State treated annuities as insurance; and (b) the balance due on the death of the annuitant is payable to a beneficiary named in the contract and thus not materially different from a specific life insurance contract. In rationalizing the latter reasoning, the court in the Fligman case, 113 Mont. at page 509, 129 Pac. (2d) at page 629, said: "The 'twenty-year endowment' insurance contract is a popular form, and on maturity the insured under most such contracts may choose one of a number of specified modes of settlement, amongst the number, one may have the value of the contract payable in annual installments to himself. It is not unusual, moreover, to have any balance due at the death

of the insured payable to the beneficiary and the *distinction between such policies and a specific annuity contract is not broad enough to classify one as insurance and place the other under a different category so far as our revenue laws are concerned.* Furthermore, if the insured dies during the twenty years, the entire sum is payable to the beneficiary as life insurance. In that event it could not be contended that the twenty-year endowment policy was not an insurance contract. This emphasizes the material point here which is that so far as the beneficiary is concerned, whatever she receives from the life insurance company under either policy is life insurance on the insured's life, although what he himself may or might have received would have been an annuity or endowment proceeds. *In other words, any of these contracts, in so far as it results in payment to the beneficiary upon the death of the insured,* to that extent is an insurance policy and such proceeds subject to the statutory exemption from inheritance tax." Emphasis supplied.

The Harper case concerned the taxability of the proceeds of three matured endowment policies. These were the identical type of insurance policy, which the above-quoted section from the Fligman case, declared to be *insurance* policies. The premiums on these endowment insurance policies were subject to tax by the insurance laws as other insurance company premium income. In the Harper case this was not sufficient to provide exemption from tax for the proceeds of these policies paid to the beneficiaries of Mrs. Harper at her death, and the court's holding in the Fligman case that *"the distinction between such policies* [matured endowment insurance policies] *and a specific annuity contract is not broad enough to classify one as insurance and place the other under a different category so far as our revenue laws are concerned"* was specifically rejected. Emphasis supplied.

In his opinion in the Harper case, supra, Mr. Justice Metcalf distinguished between annuities such as were at issue in the Fligman case and the matured endowment insurance poli-

cies involved in the Harper case. This distinction served to point up the rule applied by this court in the Harper case to the effect that exemption from taxation is dependent upon payments of proceeds derived from a contract which has an essential element, a "life insurance risk." While the Fligman decision held that the exemption from taxation there applied to annuity policies would also apply to *matured* endowment insurance policies, this court in the more recent Harper case rejected and refused to apply such doctrine.

In the Harper decision this court pointed out the exemption from tax allowed in the Fligman case was based upon the "death benefits" provided in the contracts there at issue, but that in these cases the question of taxability would have to be decided in the light of the terms of the particular contracts owned by the decedents.

In the Harper case, this court said [124 Mont. 52, 218 Pac. (2d) 928]:

"While it is not exactly correct to say that she constructively received the maturity value of the endowment policies, Blum · v. Higgins, D.C., 57 F. Supp. 140, 143, the effect after exercising the option of leaving the money with the company on interest is to make an investment at that rate. Blum v. Higgins, 2 Cir., 150 F. (2d) 471, 160 A.L.R. 1093. The life insurance part of the contract is at an end.  \*  \*  \*

"Since this was an investment at interest during Mrs. Harper's lifetime and only passed to the named contingent beneficiaries upon her death, it was a transfer intended to take effect at or after death and *should be taxed as such.*" Emphasis supplied.

This decision abolished the Fligman doctrine and established the rule that proceeds of such contracts between decedents and insurance companies, to be exempt from tax, must be life insurance proceeds as distinguished from "investment proceeds." The distinguishing characteristic between "insurance proceeds" and "investment proceeds" is the element of "insurance risk." Insurance companies write contracts under various names and

titles but each contract must be examined individually to determine whether or not the proceeds payable upon death are "insurance proceeds" or "investment proceeds." Such an examination requires nothing more that a construction of the contract to determine if the proceeds payable at death are what are construed to be, by well-recognized rules of law, insurance proceeds rather than investment proceeds.

Randolph E. Paul in Federal Estate and Gift Taxation, section 10.08, pages 498, 499, defines insurance thus: "Basically insurance is a devise which furnishes protection against a risk of loss by distributing the losses of the few among the many who are subject to the same risk. *The primary element is a risk of loss upon a contingent event*, which loss is assumed by the promisor and pooled among a larger group. In the case of life insurance the risk insured is that of premature death. This risk of loss, borne in the first instance by the insurance company is in effect distributed among the other policy holders who outlive their expectancies."

Of annuities, Mr. Paul, at page 498, says:

"From the viewpoint of risk a life insurance policy and an annuity contract are, in fact, diametrically different. Under the former the company will lose in the event of the insured's premature death; under the latter the company will gain. The only risk of the company issuing an annuity, except, for the possibility that the annuitant may outlive his expectancy, is the investment risk that the capital may shrink in value or that the return may be less than the amounts payable to the annuitant.

"Under the traditional type of annuity current payments cease at death. Such annuities, however, failed to capture wide public favor because of the possibility that premature death might cause a loss of nearly the entire premium. Therefore there have been developed innumerable species of 'refund annuities,' which have proved more tempting to buyers, but more troublesome to courts. Such annuities generally provide for continuing payments to the annuitant's designated beneficiaries in the event of his premature death, or for a lump sum payment of the un-

recouped premium. *Despite the provision for payments at death, the essential purpose of such contracts is still investment in a regular income; plus safety of the principal."* Emphasis supplied.

The legal effect of these contracts is identical when providing for death benefits as here prior to the annuity feature. taking effect as a matured endowment policy. This court in the Harper case held such contract to be taxable because *"The life insurance part of the contract is at an end.   *   *   *   This is in effect a liquid investment at interest and the equivalent of an equal sum of cash."* Emphasis supplied.

Life insurance operates to create an estate and to protect dependents against premature death of the insured, whereas ordinary annuity contracts aim to liquidate an estate and protect the annuitant against outliving his estate. As ordinarily understood life insurance means death protection as distinguished from the investment protection of ordinary annuity contracts.

"Ordinarily, it is recognized even by laymen, that contracts of life insurance and of annuity are distinctly different. One involves payments of stated amounts, known as premiums, by the insured over a period of years in return for which the insurer creates an immediate estate in a fixed amount in the event of his death while in good standing. These benefits are to be paid to some designated person other than the insured, although the policy may provide that after the expiration of a certain period of time, the insured may elect to receive certain of these amounts personally. There is an immediate hazard of loss thrown upon the insurer, with the required performance by the insured of certain obligations at designated intervals of time.

"An annuity contract is almost diametrically opposed to this. The person designated as the recipient is the person paying the money. He pays in a fixed sum at one time, in return for which the company must then perform a series of obligations over a period of years, at designated times. The hazard of loss

is no longer upon the company but upon the recipient who may die before any benefits are received. Instead of creating an immediate estate for the benefit of others, he has reduced his immediate estate in favor of future contingent income. The positions are almost exactly reversed. Annuity contracts must, therefore, be recognized as investments rather than as insurance.'' Appelman, Insurance Law and Practice, section 83, page 76.

It was this created ''estate'' that R.C.M. 1947, section 91-4406, exempts. It does not exempt estates that are presently in existence merely because they are invested with an insurance company.

It is in the light of these facts concerning ''life insurance'' and annuities that the applicability of the exemption provided in R.C.M. 1947, section 91-4406, must be viewed.

The first contract under consideration is the ''Deferred Annuity Contract.'' By this contract the insurance company incurred the obligation to refund the consideration paid by the decedent in the event he died prior to the annuity provisions of the contract coming into existence. This is all that his wife received upon his death. The amounts paid in were simply returned. No risk that the beneficiary would receive more under the contract than was paid in by the decedent was borne by the insurance company. Thus no risk had to be pooled among others. The insurance risk of life insurance policies was lacking. It was nothing more than a deposit of money by the annuitant which deposit and nothing else was to be paid to a third party under certain conditions. The conditions having occurred the liability for payment accrued. This same type of payment was held by this court to be taxable in the Harper case and for the same reasons should be taxed here.

The second contract was a ''Deferred Survivorship Annuity Policy'' or contract. The terms of the contract provided that if the survivor lived a definite term beyond the death of a named person, certain payments would be paid for life to a third party. Here there is an insurance risk. The third party

may receive more than was paid in. This risk must be pooled. This is more than just an investment of money with the provision for refund. The insurance company could pay out more than they received. The value at the death of the decedent was the value of these potential insurance proceeds and should be exempt from tax.

It is further urged that this court approved of the Fligman decision in the more recent case of In re Coleman's Estate, 132 Mont. 339, 317 Pac. (2d) 880, but in the Coleman case the value of the admitted life insurance policies exceeded $50,000. In addition there were several annuity policies of some $2,000 in value in the estate. No matter which way the pie was cut, the excess over $50,000 was taxable. Whether this consisted of annuities or life insurance policies was never determined and thus the taxability or nontaxability of annuities in the Coleman case was not an issue in the case and any reference therein to the Fligman case is merely *dictum*.

In the instant appeal, I would reverse the district court's holding in respect to the ''Deferred Refund Annuity Contract'' and hold the proceeds of said contract subject to tax. I would affirm the district court's holding in respect to the ''Deferred Survivorship Annuity Policy'' and hold such value deemed accrued to the beneficiary to be proceeds of insurance and therefore exempt from tax. For the above reasons I am unable to concur in the majority opinion herein.