10 Utah 2d 427 (1960)
354 P.2d 112
IN THE MATTER OF THE ESTATE OF FRANK ROUNDY CLARK, DECEASED.
STATE TAX COMMISSION OF UTAH, APPELLANT,
v.
LEAH E. CLARK, EXECUTRIX OF THE ESTATE OF FRANK ROUNDY CLARK, RESPONDENT.
No. 9001.
Supreme Court of Utah.
July 14, 1960.
E.R. Callister, Jr., Atty. Gen., John G. Marshall, Gordon A. Madsen, Asst. Attys. Gen., Ben E. Rawlings, David E. West, Tax Commission, Salt Lake City, for appellant.
Rich, Elton & Mangum, Salt Lake City, for respondent.
WILL L. HOYT, District Judge.
This case involves the question of taxability, under Utah's inheritance tax statute, of moneys received by a beneficiary under a death benefit clause of a retirement plan group annuity contract.
For a number of years prior, and up to the time of, his death, Frank Roundy Clark was an employee of Utah Oil Refining Company. That company had arranged with Equitable Life Assurance Society for the oil company's employees to be covered by a retirement plan group annuity contract. It provided that specified premiums should be paid, one-half by the employer and one-half by the employee, and that, upon retirement under specified conditions, the employee would be entitled to receive a lifetime annuity. The contract also recited:
"If an employee dies before his retirement date while annuities purchased with his purchase payments are in force, the Equitable, upon receipt of due proof of such death, will pay in a single sum to the beneficiary a death benefit equal to the accumulation of the employee's purchase payments with interest, computed in accordance with the contract. No death benefits will be allowed by the Equitable with respect to the employer's purchase payments. The Equitable reserves the right to change the interest rate in accordance with the terms of the contract."
The contract further provided that the employee had the right to designate the beneficiary under the death benefit clause and to change such designation at any time; also that if the employee died after retirement, without receiving annuity payments equal to the amount of his contributions to the retirement fund, the insurer would pay the difference in a lump sum to the beneficiary named in the death benefit clause. The contract also provided that if the employee's employment terminated before his retirement date he had the option to receive an annuity in the amount purchased by his payments or at his option to withdraw the amount of his payments with interest. A certificate was issued to each employee setting forth the rights and obligations of the employee under the group contract.
Frank Roundy Clark died leaving a will in which his wife, Leah E. Clark, was named executrix. She was also named as Clark's beneficiary under the death benefit clause of the group annuity contract above mentioned, and received as such beneficiary under that contract $10,890.70. She did not include this in her inheritance tax report in Clark's estate. The Tax Commission refused to accept settlement of inheritance tax without the inclusion of the proceeds received by the widow under the group annuity contract in the inheritance tax inventory. The executrix thereupon filed a petition praying for a determination by the court that the moneys received under the annuity contract did not constitute any part of the estate taxable under the inheritance tax statutes. After a hearing the court decided against the contention of the Tax Commission and this appeal is brought from that adjudication. The Tax Commission is referred to herein as the appellant and the executrix as the respondent.
The following provisions of the inheritance tax statutes, Chapter 12 of Title 59 of Utah Code Annotated 1953, require examination in connection with the questions herein involved:
"59-12-2. A tax equal to the sum of the following percentages of the market value of the net estate shall be imposed upon the transfer of the net estate of every decedent, whether a resident or nonresident of this state * * *."
"59-12-3. The value of the gross estate of a decedent shall be determined by including the value * * * of all property, real or personal, within the jurisdiction of this state, and any interest therein, whether tangible or intangible, which shall pass to any person, in trust or otherwise, by testamentary disposition or by law of inheritance or succession of this or any other state or country, or by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after his death. * * *"
59-12-7 provides how the net estate is to be determined and what deductions are to be allowed from the gross estate.
In construing the foregoing it is deemed advisable to also consider Sec. 59-12-5 which provides as follows:
"59-12-5. Whenever property is held in the joint names of two or more persons, or as tenants by the entirety, with right of survivorship, or is deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to the survivor or survivors upon the death of one of such persons, the right of the survivor or survivors to the immediate ownership or possession and enjoyment of such property, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth, shall be deemed a transfer taxable under the provision of this chapter * * *"
It should be noted that the term "inheritance tax" is misleading, and that this court has heretofore held that the tax provided for in the Utah statute is a tax on the right to transmit property rather than a tax on the right to inherit property or to receive it by devise or bequest. In other words, it is an "estate tax." State Tax Commission v. Backman, 88 Utah 424, 55 P.2d 171; Walker Bank & Trust Co. v. State Tax Commission, 100 Utah 307, 144 P.2d 1030. It should further be noted that Utah has no statute which specifically taxes or specifically exempts proceeds paid to a beneficiary under a death benefit provision of an annuity contract or a life insurance policy. Also that Utah has no statute giving to a wife or other beneficiary of a life insurance policy or annuity contract an immediate vested interest in the policy or contract. Some states have such statutes with respect to life insurance policies wherein a wife is designated as beneficiary (See Bailey v. Wood, 202 Mass. 549, 89 N.E. 147, 25 L.R.A., N.S., 722.) Courts in states having such statutes have held that proceeds of insurance paid to a wife are not to be considered as "property passing by gift intended to take effect in possession or enjoyment at or after death," the reason given being that the beneficiary takes an immediate vested interest in the policy upon being designated beneficiary. See Tyler v. Treasurer & Receiver General, 226 Mass. 306, 115 N.E. 300, L.R.A. 1917D, 633. Some insurance companies also have, or in earlier years have had, provisions in their charters or by-laws which have had similar effect in policies issued by them. See Central National Bank v. Hume, 128 U.S. 195, 9 S.Ct. 41, 32 L.Ed. 370. Utah has a statute, Sec. 78-23-1(8) which exempts from execution "All moneys, benefits, privileges or immunities accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed $500." But exemption from execution for payment of debts does not exempt from payment of estate taxes.
Counsel for respondent contend that the payment received by the beneficiary herein was in the nature of proceeds of life insurance and "passed to her by the terms of the policy and not by the laws of intestacy or wills" and are therefore not subject to the tax sought to be imposed. Counsel assert that the ruling of this court in In re Fenner's Estate, 2 Utah 2d 134, 270 P.2d 449, establishes that proceeds of life insurance are not taxable under the inheritance tax law. They rely upon the following statement from the opinion in that case: 2 Utah 2d at page 136, 270 P.2d at page 450.
"The proceeds of a policy of life insurance payable to a specific beneficiary or assignee have generally been held not to be subject to state taxes on the death of the insured, in the absence of a statute expressly providing to the contrary, for the reason that the proceeds of such a policy pass by the terms of the insurance contract, and not by the will of the insured or the intestate laws, and the rights of the beneficiary or assignee arise at the time when the policy is issued or the assignment is made rather than upon the death of the insured."
The quoted statement was evidently taken from a statement in similar language found in 150 A.L.R. 1288 in the annotation appended to Gragg v. Commissioner of Corporations and Taxation, 315 Mass. 704, 54 N.E.2d 169. The first so-called reason "that the property passes by the terms of the insurance contract and not by the will of the insured or by the intestate laws" is clearly insufficient under a statute such as ours making taxable property which passes by grant or gift to take effect upon death of the grantor or donor. The second stated reason that "the rights of the beneficiary or assignee arise at the time when the policy is issued or the assignment is made" is definitely not correct in the case of a beneficiary where the insured has retained up to the time of his death the right to change the beneficiary or to make the insurance payable to his estate. The quoted statement as found in the Fenner case was not necessary to the decision of that case and must be considered dicta. That case was an action brought to determine whether the estate of Cora E. Fenner could be charged with so-called inheritance tax upon certain funds paid under certain insurance policies upon the life of her husband, Walter E. Fenner, who predeceased her. Cora was named as a beneficiary to receive the insurance but the policies further provided that if she did not in her lifetime draw such proceeds, any balance remaining after her death should be paid to certain designated nieces and nephews. Cora did not draw the proceeds, except interest. In her will she provided that the proceeds should go to the same nieces and nephews designated by Walter in the policies, and in the same proportions. This court held that the beneficiaries received the payment, under the terms of the policies and not by the will of Cora, and further held that, although she had a power of appointment over the fund, such power did not make the fund taxable as property passing from her estate, also that her failure to exercise the power did not constitute a transfer subject to tax. That holding cannot be considered as an adjudication of the question whether or not, for the purpose of estate tax, proceeds of life insurance shall be deemed "property or an interest in property which passes by grant of gift intended to take effect upon death" of the insured.
Counsel for respondent contend however that the dictum in the Fenner case is a correct statement of the law and that neither proceeds of life insurance nor payments made under a death benefit provision of an annuity contract are subject to inheritance or estate tax. It therefore appears to be desirable to examine the cases cited in support of the statement referred to.
The Federal government and a number of the states have statutes which specifically exempt proceeds of life insurance within specified limits from succession or estate tax. The State of Washington has such a statute and the decision in In re Killien's Estate, 178 Wash. 335, 35 P.2d 11, cited in the Fenner case, was based upon that statute. As hereinabove mentioned, Utah has no such statute. Massachusetts and some other states have statutes which give a married woman an immediate vested interest in a life insurance policy in which she is designated beneficiary. See Bailey v. Wood, 202 Mass. 549, 89 N.E. 147, 148, 25 L.R.A.,N.S., 722.
"* * * every policy of life insurance made payable to or for the benefit of a married woman or after its issue assigned, transferred, or in any way made payable to a married woman or to any person in trust for her or for her benefit, whether procured by herself, her husband, or by any other person, shall inure to her separate use and benefit, and to that of her children, subject to the provisions of this section relating to premiums paid in fraud of creditors." St. 1894, p. 718, c. 522, Sec. 73; Rev.Laws, c. 118, Sec. 73
Under such statutes it is held that the insured cannot change the beneficiary or make an effective assignment of a life insurance policy in which his wife is named as beneficiary without the consent of the wife. See Central National Bank v. Hume, 128 U.S. 195, 196, 9 S.Ct. 41, 44, 32 L.Ed. 370. Also that the wife upon being designated as beneficiary, takes immediately a vested interest in the policy. Tyler v. Treasurer & Receiver General, 226 Mass. 306, 115 N.E. 300, L.R.A. 1917D, 633. Although not expressly stated in the case, this appears to be the underlying reason for the holding of the court in that case that the proceeds paid to the beneficiary were not subject to state inheritance or succession tax. That case is cited in support of the above mentioned dictum in the Fenner case. In the absence of such a statute, or some provision in the policy having a similar effect, it cannot be said that a beneficiary takes an immediate vested interest in a life insurance policy at the time of being designated beneficiary. Utah has no such statute. In Utah an insured can change the beneficiary or assign a life insurance policy without consent of the beneficiary  unless required by the terms of the policy itself. Since it is common practice for life insurance companies to issue policies in which the insured reserves the right to change the beneficiary or to assign the policy, it is not correct to say that, in this state, the beneficiary takes a vested interest in the policy immediately upon being designated beneficiary. In such a policy "the beneficiary acquires no absolute right in the policy or its proceeds by his designation as such beneficiary, but acquires a conditional interest subject to defeasance, which interest consists merely of an expectancy during the life of the insured, contingent upon remaining the beneficiary until the time of the insured's death." 29 Am.J. 952, Sec. 1276, n. 19. This court has heretofore said:
"* * * [W]here the right to change the beneficiary is reserved by the insured, the beneficiary named in the policy obtains merely an inchoate right, dependent entirely upon the will of the insured during his lifetime." Wentworth v. Equitable Life Assurance Society, 65 Utah 581, 238 P. 648, 653.
I therefore believe that it is appropriate for the court in this case to announce that the dictum in the Fenner case should not be looked upon as an authoritative pronouncement that proceeds of life insurance are exempt from taxation under Utah's inheritance tax statute. I also believe that there is long overdue a critical re-examination, or, in the words of the late Secretary Dulles, "an agonizing reappraisal" of the inheritance tax laws of Utah by the Tax Commission and the Legislature. It may be very desirable that there should be some limited exemption of proceeds of life insurance from taxation. But whether great amounts of assets should be permitted to be transferred at death, free from tax, by the simple expedient of purchase of a life insurance policy is a question which deserves careful study and consideration by the legislature. Also, the question of whether proceeds of life insurance  at least to the extent of premiums paid therefor  are taxable under the present Utah statute should be given careful and critical study by the Tax Commission without further delay. In this connection attention is called to a highly interesting and well-documented article by Dale E. Anderson entitled "Insurance and Powers of Appointment under the Utah Inheritance Tax," in volume 6 of Utah Law Review (1958) beginning at page 57.
We turn now to respondent's contention that the fund involved herein should be deemed proceeds of life insurance. Counsel cites Sec. 31-1-7, Utah Code Annotated 1953, defining insurance as follows:
"31-1-7: Definition of insurance. Insurance is a contract whereby one undertakes to pay indemnity or pay a specified amount upon determinable contingencies."
But when that is read in connection with Sec. 31-11-2 it is obvious that the legislature did not intend to include annuity contracts in a definition of life insurance. The later section reads as follows:
"31-11-2. Life insurance  Definition and scope of  Annuities. Life Insurance is insurance on human lives and insurances appertaining thereto or connected therewith. The transacting of life insurance includes the granting of endowment benefits; additional benefits in event of death by accident or accidental means; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.
"Annuities are all agreements to make periodical payments where the making or continuance of all or some of the series of such payments, or the amount of any such payment, is dependent upon the continuance of human life, except payments made under the authority of the previous paragraph."
Respondent also cites Secs. 31-2-16, 31-5-19, 31-22-3 and Chapter 23 of Title 31 of the 1953 code. We find nothing in these sections to justify the claim that an annuity contract such as herein involved should be classified as life insurance either for the purpose of estate tax or otherwise. Respondent urges however that such has been the holding of other courts under statutes similar to ours, citing In re Fligman's Estate, 113 Mont. 505, 129 P.2d 627 and In re Estate of Hammerstrom, Mont., 326 P.2d 699. In these cases the majority of the Montana court held that annuity contracts should be classified as insurance under the Montana statute exempting proceeds of insurance to the extent of $50,000 from state inheritance tax. In the Fligman case, however, two of the five justices joined in a strong dissenting opinion. In the Hammerstrom case one justice wrote a dissenting opinion and another concurred with the majority solely upon the ground of stare decisis. We believe that the dissenting opinions in these Montana cases represent the better reasoning and are supported by the great weight of authority from other jurisdictions, including the Supreme Court of the United States.
The question is discussed at length in the case of Gregg v. Commissioner of Corporations and Taxation, 1944, 315 Mass. 704, 54 N.E.2d 169, 170, 150 A.L.R. 1280. It was there held that a death benefit received by a wife on the death of a husband under a retirement annuity contract was subject to succession tax under the Massachusetts statute, G.L.(Ter.Ed.) c. 65, § 1, which provided that "All property * * * and any interest therein * * * which shall pass * * * by deed, grant or gift, * * * made or intended to take effect in possession or enjoyment after * * * death * * * shall be subject to a tax." It should be noted that this decision is by the same court which previously, in Tyler v. Treasurer & Receiver General, 226 Mass. 306, 115 N.E. 300, held that proceeds of life insurance paid to the wife of the insured, who was designated beneficiary, were not subject to inheritance tax. In a lengthy annotation appended to the Gregg case, beginning on page 1285 of 150 A.L.R. cases are collated with reference to succession, inheritance or transfer taxes in respect to proceeds of life insurance and annuity contracts. As shown in the section dealing with annuity contracts, beginning on page 1296, nearly all of the reported decisions except the two cases from the state of Montana hereinabove mentioned have held that proceeds received by a designated beneficiary under a death benefit provision of an annuity contract are subject to estate or succession tax. On page 1292 of the same annotation the subject of employee's retirement funds is considered and it is shown that payments made to designated beneficiaries under death benefit clauses of such retirement contracts, in all except one of the cited cases, have been held to be subject to succession tax and that the only case holding otherwise was later overruled. The reader's attention is also directed to the following additional citations: Garos v. State Tax Commissioner, 99 N.H. 319, 109 A.2d 844; Dolak v. Sullivan, 145 Conn. 497, 144 A.2d 312; In re Daniels Estate, 159 Ohio St. 109, 111 N.E. 252; In re Simpson's Estate, 43 Cal.2d 594, 275 P.2d 467, 47 A.L.R.2d 991; 28 Am.J. Revised Inheritance, Estate & Gift Taxes, Sec. 256; 6 Utah Law Review 57 (1958).
Based upon the foregoing reasons and authorities we hold that the proceeds received by the beneficiary under the annuity contract herein involved cannot be considered to be "proceeds of life insurance" and that they are subject to tax under the inheritance tax statute. The decision of the trial court is reversed and judgment ordered in harmony herewith. Costs to appellant.
CROCKETT, Chief Justice (concurring specially).
I concur in the result reached in the opinion of Judge HOYT on the grounds that the accumulated fund of $10,890.70 paid to Leah E. Clark under the annuity contract is not "proceeds of life insurance."
The issue seems to have become beclouded because an insurance company is the financing institution which agreed to furnish the annuity and because the contract provides that upon the employee's death the company will pay to the named beneficiary an amount equal to the employee's contributions. The fact that this money was payable upon the employee's death and is referred to in the contract as a "death benefit" furnishes the basis for the argument that it may be regarded as life insurance. However, it is not the terms used, but the facts which determine its true character. If we make an independent analysis of the fund of money in question, exactly how it came into being and into the hands of Mrs. Clark, it will be seen that it is not correctly regarded as insurance, but was an attempt to purchase an annuity for Mr. Clark's lifetime, which failed of its purpose, and therefore the payments made toward it were refunded.
The projected annuity for Mr. Clark is not the aspect of the contract with which we are particularly concerned. The inquiry here pertinent is as to the phase of the contract which deals with Mrs. Clark's relationship to it and the process by which she acquired the money in question. Insofar as she was concerned, the company's only obligation was that if at the time of Mr. Clark's death, it had not repaid to him the full amount of his personal contributions toward the annuity, it would pay over to her the amount he had paid in, plus interest thereon.
In analyzing the problem it is helpful to compare it with analogous situations. If, instead of entering into this particular contract to provide an income after his retirement, Mr. Clark had by a plan of systematic savings accumulated this fund of $10,890.70 in bonds, stocks or a savings account, subject to his control and disposition as this account was, and had died, leaving it to his wife, there is no question but that it would be considered part of his estate; likewise, if just prior to his death he had taken such a fund and purchased an annuity, to be amortized back to him at so much per month, with any amount remaining in the fund at his death to go to his wife, it seems equally logical that in such instance it would also have been part of his estate and not life insurance.
There appears to be no significant difference between the situations just described and that in the instant case. It is important to bear in mind that the deceased could have quit and withdrawn his accumulations at any time. It remained his property and under his control just like a savings account, stocks, bonds or any other property. Inasmuch as he owned it, it would have passed to Mrs. Clark even if the contract had said nothing about it. The fact that it recited what would happen as a matter of law anyway should not be considered as transforming it into life insurance.
Correlated to the proposition just stated is the important and controlling fact that the financing institution, Equitable, incurred no risk of loss in the event of Mr. Clark's death. It was obliged to pay nothing except to refund the payments he had made toward the annuity, plus interest thereon. In regard to the company's contributions, it expressly provided that:
"No death benefits will be allowed by the Equitable with respect to the employer's purchase payment * * *"
From the facts above discussed it seems quite unmistakable that the contract was one for an annuity and that it does not have the characteristics to properly classify it as a contract for life insurance.
An "annuity" is a provision for an income for a period of years or for life, with no indemnity feature; whereas, "insurance" is an agreement that, for a premium it receives, the insurer will pay to a beneficiary a stated sum upon the happening of a contingency such as death, or other loss. It involves risk on the part of the insurer to pay on the happening of the contingency and the spreading of the risk over the group who pay the premiums.[1] Or, as is sometimes stated, "Insurance involves risk-shifting and risk-distributing."[2] Recognition of this principle is reflected in our statute: Sec. 31-1-10, U.C.A., 1953:
"`Insurer' defined.  `Insurer' includes all persons engaged in the assumption of insurance risks." (Emphasis ours.)
That view is supported by a clearly stated and well-reasoned treatment of the subject in In re Atkins' Estate[3] in which the New Jersey Supreme Court discusses a similar proposition:
"* * * The refund annuity contract such as we are here considering is very different. By it the insurance company agrees to repay the annuitant, in instalments during his life, the amount paid in by him to the company, and if at his death there be a balance unpaid to him, to pay that balance to the person designated by the annuitant to receive the same. It is a contract by which the annuitant protects himself, during his life, by making an investment which will assure the receipt by himself, of an adequate or desired annual sum during his lifetime, with the further assurance that if he should die prematurely, his estate or those whom he desires to receive distribution thereof will not suffer the loss of the repayment he has himself not yet received."
The court placed emphasis on the fact that in the annuity contract the company assumed no risk of loss by reason of the premature death of the annuitant, and that its only risk was in case the annuity matured and the annuitant lived longer than expected. It reasoned in accordance with the views expressed above that because there was no risk-shifting or risk-distributing in connection with the annuity phase of the contract, but simply a return of the accumulated payments upon the death of the employee, that the fund was not life insurance. The Supreme Court of the United States similarly reasoned to the same conclusion in the case of Helvering v. LaGierse.[4]
As explained in the opinion of Judge HOYT, the facts in In re Fenner's Estate,[5] are significantly different from those involved here where Mrs. Clark was simply entitled to receive back the payments her husband had made toward the purchase of an annuity. For the foregoing reasons it is my opinion that the Tax Commission was correct in ruling that the money she thus received should be considered part of the decedent's estate and subject to tax under the inheritance tax statutes, Secs. 59-12-1 to 7, inc., U.C.A. 1953.
McDONOUGH, J., concurs in the concurring opinion of CROCKETT, C.J.
WADE, Justice (dissenting).
I dissent. In my opinion the moneys received by a beneficiary under a death benefit clause of a retirement plan covering employees of a company under the facts here disclosed are not taxable under the provisions of our inheritance tax statutes. This court in In re Fenner's Estate[1] has indicated that it approves the view that the proceeds of life insurance policies payable to specific beneficiaries are not, in the absence of statutes to the contrary, subject to taxes on the death of the insured because the proceeds pass by reason of the terms of the insurance contract and the rights of a beneficiary arise at the time the contract is made and not upon the will of a testator or under the intestacy laws.[2] Because of this, it is my opinion that the proceeds is not property includable within the gross estate of a decedent under the provisions of Sec. 59-12-3, U.C.A. 1953, which provides that property shall be included which passes "by testamentary disposition or by law of inheritance or succession * * * or by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after his death * * *" This reasoning is equally applicable to the death benefit clause in group retirement insurance as far as the beneficiary under such clause is concerned. His right to the benefits came into being at the time the policy was issued, even though the insured might have the right to change the particular beneficiary at will, and it passes to him under the terms of the policy and not as a sale or gift made in contemplation of death or under a will or under the intestacy law. The fact that the beneficiary's right was part of a group annuity contract does not change the nature of the right, which is to obtain the benefits under the terms of the contract upon the death of the insured.[3] I think that the legislature recognized the fact that annuity insurance policies might also be life insurance policies when in Sec. 31-11-2, U.C.A. 1953 it said:
"Annuities are all agreements to make periodical payments where the making or continuance of all or some of the series of such payments, or the amount of any such payment, is dependent upon the continuance of human life, except payments made under authority of the previous paragraph." (Emphasis mine.)
The previous paragraph defines life insurance. The right which the beneficiary has is an endowment benefit. Endowment benefits are included within the definition of life insurance. If endowment benefits were to be included within the definition of annuities there would have been no need for the legislature to have made the exception to distinguish payments made under the annuity provisions of the contract and those made under an endowment provision for the benefit of one other than the insured.
HENRIOD, Justice (dissenting).
I concur with Mr. Justice WADE'S dissent. The money was paid to Mrs. Clark only because of the insurance policy terms. It was paid on the contingency of death. It was a contract that in consideration of a premium paid, the promisor would pay a sum certain to Mrs. Clark if Mr. Clark died before receiving the full amount payable thereunder. Why such a contract should be construed to exclude the payments to Mrs. Clark from the phrase "proceeds of life insurance" but otherwise under the terms of a standard term life policy is something difficult to understand, particularly where such a contract should be construed in a light most favorable to the taxpayer. In my opinion "life insurance" is and should be construed as life insurance if it calls for payments to a specified beneficiary based on the fact of life's continuance or its termination.
I believe the main opinion may be looking at this matter from a standpoint of "risk" only, i.e., that if there be a risk any proceeds going to a named beneficiary upon the contingency of the death of another are "proceeds of life insurance," but lacking such risk the same kind of proceeds to the same kind of beneficiary based on the same kind of consideration and the same contingency of death are not. Risk should have nothing to do with our issue. Contractual principles should govern. So far as they do, the terms relating to the real party in interest, the beneficiary, are identical. A policyholder pays a premium for a promise to pay a named beneficiary when the assured dies. It seems to me that to construe statutes that at best are not too articulate to require a widow to pay the tax in the one case but not in the other, depending on what the insurance company might gain or lose, is to indulge in unwarranted fine distinction and cramped construction. The insurance company should be cast only in the role of promisor under both contracts, identical in terms except as to risk,  a matter of interest, not to the beneficiary but to the company alone, rather than to justify payment or non-payment on the basis of the nature or degree of risk involved.
The so-called analogy to the instant case urged by Mr. Chief Justice CROCKETT'S concurring opinion, having to do with accumulating bonds, stocks, etc., and leaving them to his wife is no true analogy at all. It is based on entirely different facts. In the example he presents, no contract is executed providing for payment by a named obligor, of a sum certain to a named beneficiary on the contingency of someone's death.
Another illogical analogy is indulged in my opinion, when the Chief Justice says that so long as Clark controlled the fund it "would have passed to Mrs. Clark even if the contract had said nothing about it." If the contract had said nothing about it you would have a different fact situation, with no promisor agreeing to pay a sum certain to a certain person based on the contingency of death. The assumption indulged that Mrs. Clark would get the money anyway is in error, I believe, since Clark's heirs would get it, not Mrs. Clark, unless she happened to be sole heir.
CALLISTER, J., did not participate.
NOTES
[1] See Sec. 31-11-2, U.C.A., 1953; Helvering v. LaGierse, 312 U.S. 531, 61 S.Ct. 646, 649, 85 L.Ed. 996.
[2] Ibid.
[3] 129 N.J. Eq. 186, 18 A.2d 45, 49.
[4] See Footnote 1, Supra.
[5] 2 Utah 2d 135, 270 P.2d 449.
[1] In re Fenner's Estate, 2 Utah 2d 134, 270 P.2d 449.
[2] 150 A.L.R. Annotation p. 1288, Sub. IIIa.
[3] In re Fligman's Estate, 113 Mont. 505, 129 P.2d 627.