[S. F. No. 15018. In Bank.—February 21, 1935.]

In the Matter of the Estate of LILLY CROSBY, Deceased.
RODNEY A. YOELL, Appellant, v. SVERRE
CROSBY et al., Respondents.

Hartley F. Peart, Gus L. Baraty and Howard Hassard for Appellant.

Frank J. Fontes, for Respondents.

WASTE, C. J.—The residuary legatee and devisee under the last will and testament of Lilly Crosby, deceased, prosecutes this appeal from an order of the probate court setting aside to the second and surviving husband of the decedent the sum of $7,847.55, representing the proceeds of a life insurance policy issued on the life of the decedent's first husband.

On March 25, 1927, the Continental Life Insurance Company issued a policy of life insurance on the life of C. F. N. Klitgaard. Under the terms of the policy the insurer, upon receipt of due proof of the death of the insured, agreed to pay to the wife of the insured, the decedent above named, as beneficiary under the policy a stipulated sum per month until 240 monthly installments, aggregating $12,000, had been paid. The insured predeceased the beneficiary. No premiums were payable on the policy subsequent to the death of the insured and none was thereafter paid. The beneficiary later married Sverre Crosby, one of the respondents herein. Upon the subsequent death of the beneficiary under the policy there was paid to the executor of her estate by the insurer the commuted value of the monthly installments under the policy in the sum of $7,999.98. Thereafter the surviving second husband petitioned the probate court to set aside to him as property by law exempt

from execution all household furniture, clothing, personal effects and jewelry, concerning which there is no dispute, and the proceeds of said life insurance policy. The petition, as to the insurance proceeds, was based on the provisions of subdivision 18 of section 690 of the Code of Civil Procedure and section 660 of the Probate Code. The residuary legatee opposed the petition contending that the proceeds of the policy did not come within the purview of the cited code sections and were not therefore exempt from execution. After hearing, the probate court made its order granting the petition and setting aside the sum of $7,847.55, which sum represents that proportion of the then total commuted value of the policy which an annual premium of $500 bears to the annual premium of $533.85, payable under the policy. This appeal followed.

So far as material here, section 690 of the Code of Civil Procedure exempts from execution or attachment: "All moneys, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars, and if they exceed that sum a like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges and immunities so accruing or growing out of such insurance that said five hundred dollars bears to the whole annual premiums paid."

Section 660 of the Probate Code provides that, "The decedent's surviving spouse and minor children are entitled to remain in possession of the homestead, the wearing apparel of the family, the household furniture and other property of the decedent exempt from execution, until the inventory is filed. Thereupon, or at any subsequent time during the administration, the court, on petition therefor, may in its discretion set apart to the surviving spouse, or, in case of his or her death, to the minor child or children of the decedent, all or any part of the property of the decedent, exempt from execution, . . . "

Briefly stated, this appeal presents the question whether the proceeds of a life insurance policy on the life of an insured who had paid all of the premiums therefor prior to his death, which proceeds were payable and paid in monthly installments to his widow during her life and a commuted balance to the executor of her will upon her

death, are life insurance moneys to which her second husband, upon her death, is entitled as property exempt from execution under the above code sections. The appellant contends that exemption statutes are primarily enacted for the benevolent purpose of saving debtors and their families from want by reason of misfortune or improvidence, and that the surviving second husband is a stranger to the life insurance on the life of the decedent's first husband, and a stranger to the family of said insured, and is not therefore entitled to claim the property for his support as property exempt from execution within the spirit and intent of the cited code sections. Respondent, on the other hand, urges that the situation here presented falls within the letter of the foregoing code sections and that the same should be literally construed and given full force and effect. The case appears to be one of first impression in this jurisdiction and an exhaustive research of the authorities has failed to bring to light any decision from other jurisdictions presenting the identical issue here confronting us. Certain cases have been uncovered, however, the reasoning of which will be helpful in the disposition of the present cause. They will be referred to in the course of our discussion.

Preliminarily to a determination of the applicability of the above code sections to this cause, and as an aid in the solution of that problem, it is essential to ascertain the purpose that underlies the adoption of exemption statutes. In *Estate of Millington*, 63 Cal. App. 498, 500 [218 Pac. 1022], it is stated that, "while exemption laws are to be liberally construed, the manifest purpose of their enactment must be kept in mind. 'Statutes exempting property from execution are enacted on the ground of public policy for the benevolent purpose of saving debtors and their families from want by reason of misfortune or improvidence.' " Substantially the same discussion appears in 12 California Jurisprudence, 332, but it is therein added, upon citation of authority, that the construction given such statutes must be a reasonable one and "not one which would pervert the benevolent design and enable gross frauds to be perpetrated under color of law". There can be no doubt that the exemption of insurance moneys constitutes a part of this same benevolent public policy. In 7 Cooley's Briefs on Insurance, 6508, the following appears: "All the statutes bearing

on the exemption of life policies or their proceeds seem based on the theory that, in the absence of an expressed contrary intent, the object of an ordinary life insurance policy should be considered as the protection of insured's family after his death, and that this object and desire is laudable and in accordance with public policy."

 It is settled in this state, contrary to some jurisdictions, that exempt property passing to the persons designated in section 660, *supra*, is, by virtue of the provisions of that section, free not only from the debts of the decedent, but also from those of the persons so designated. (*Holmes* v. *Marshall*, 145 Cal. 777 [79 Pac. 534, 104 Am. St. Rep. 86, 2 Ann. Cas. 88, 69 L. R. A. 67].) In view of this, it must be conceded that upon the death of the insured, C. F. N. Klitgaard, the proceeds of the policy above referred to passing to his surviving widow, the decedent herein, were free from garnishment and execution not only for the debts of the insured, but also for the debts of the beneficiary. However, the fact that the proceeds of the policy, whether paid to the beneficiary in monthly installments or in a lump sum, were exempt property during her lifetime, should not cause the same, or the commuted value thereof upon her death, to remain exempt in the hands of her executor so as to cause the same to pass to her surviving second husband free from garnishment and execution. Any other conclusion would, in our opinion, extend the exemption, which, as we have seen, is to inure to the benefit of the insured's family, in this case the decedent, and not her surviving husband, far beyond the benevolent purpose for which it was intended.

Upon the death of the insured in the present case, the exemption was intended to and did apply in favor of his surviving widow, the decedent herein, but to continue such exemption beyond her lifetime and in favor of her second and surviving husband, who, of course, was not a member of the family of the insured, would be an unreasonable construction of the code sections and would, in effect, "pervert the benevolent design" for which the exemption was created. That the exemption of insurance proceeds is to be limited to the surviving spouse or family of the *insured* is declared in *Estate of Pillsbury*, 175 Cal. 454 [166 Pac. 11, 3 A. L. R. 1396], wherein certain minor children of the

insured-decedent, who had been adopted by their uncle pending administration on their father's estate, moved the probate court, through their guardian, to set aside to them as property exempt from execution the proceeds of certain life insurance policies issued on the life of their father. The decision, while declaring that the minors' rights as heirs of their father were fixed and determined as of the time of his death, and were not affected by their subsequent adoption, concludes, however, that by such adoption the minors then ceased to be of the family of the decedent and were not therefore entitled to have the proceeds of the life insurance policies, issued on the life of the decedent, their natural father, set aside to them as exempt property.

The decision in *Estate of Starr*, 183 Cal. 121, 123 [190 Pac. 625], is also authority for the conclusion that the exemption was intended to apply, as provided in the code section, only to the surviving spouse of the assured, and if there be no surviving spouse, then to the minor children of the assured. In the cited case the assured left as his only heirs at law seven adult children. His sole estate consisted of a life insurance policy payable to his executors, administrators and assigns. In settling the final account of the administratrix, the probate court refused her petition to distribute the same to the heirs at law and directed that it be applied in discharge *pro tanto* of a judgment debt. The administratrix and the heirs appealed. In discussing the pertinent exemption statute, the court held:

"The provisions of our code applicable to the situation described are found in section 690 of the Code of Civil Procedure, subdivision 18 of which, in enumerating the kinds of property exempt from execution, specifies 'all moneys . . . accruing or in any manner growing out of any life insurance', etc., if the annual premiums paid do not exceed five hundred dollars; and section 1465 of the same code [now section 660, Probate Code], which declares that all exempt property may be 'set apart for the use of the surviving husband or wife, or in case of his or her death, to the minor children of the decedent'. There is no doubt that under these sections the policy was exempt from execution during the lifetime of the deceased, and the proceeds after his death. The difficulty that arises in this case results from the fact that there is no express provision for

the distribution of exempt property after the death of the debtor except in the case provided for in section 1465 of the Code of Civil Procedure. Here there was no one entitled to take the property under this provision. There was, therefore, no reason why this property should not be administered in the same manner as any other property belonging to the estate. The law requires that such property shall be applied first to the payment of the debts of the deceased, and after such payment shall be distributed to the heirs. *The exemption was intended to apply to the decedent and upon his death to the surviving spouse, and if there were no surviving spouse then to the minor children of the deceased.*"

*In re Tellier's Estate*, 210 Iowa, 20 [230 N. W. 545], presented a situation necessitating, as here, a determination of the extent of an exemption statute. There the statute exempted the proceeds of a life insurance policy payable to the surviving widow of a decedent "from liability for all debts of such beneficiary contracted prior to the death of the assured". At the time of her death, the beneficiary, who was the surviving widow of the assured, left as her only estate $2,000 derived from a policy on the life of her predeceased husband. The question involved was whether this sum remained, as during her lifetime, exempt from such debts as she had incurred prior to her husband's demise. The court declared that, "During the lifetime of the widow, the fund not only belonged to her, but it was exempt in her hands against her own debts contracted prior to the death of her husband. She could have disposed of the fund as she would in her lifetime. Whether she could have disposed by it by will we shall not anticipate. This resolves the problem to the final question: Did the exemption survive the debtor? Does the exemption inure to the benefit of her estate after her death? Does the exemption inure to the benefit of her heirs? We answered a like question in the negative quite recently in *Appanoose County* v. *Carson*, 210 Iowa, 801 [229 N. W. 152]. For the reasons here indicated, we hold that the heirs take as heirs of the widow, and not otherwise, and that the exemption provided in her favor by paragraph 4, section 8776, ceased to operate at her death, and did not inure to the benefit of her heirs."

In limiting the exception to the persons designated in the code section, *supra*, we give ample and full effect to the benign purpose of the legislature. To extend it, as respondent Crosby would have us do, to persons not designated in the section and not possessing the necessary connection with the insured's family, would readily result in an endless chain of unwarranted exemptions never contemplated by the legislative body.

What we have said sufficiently disposes of this appeal and warrants the conclusion that the court below erred in setting aside to the respondent Crosby as property exempt from execution the sum of $7,847.55, representing that proportion of the commuted value of the policy of insurance issued on the life of C. F. N. Klitgaard, which an annual premium of five hundred dollars bears to the annual premium payable under the policy. ■ Inasmuch as the respondent Crosby, as to the proceeds of this policy, is not a person entitled to claim the exemption thereof, it is immaterial for present purposes that the appellant and residuary legatee is not of the family of the assured or of the decedent herein. As residuary legatee under the will of the decedent herein he may, of course, oppose any attempt to improperly set aside nonexempt property.

The order appealed from is reversed with directions to the court to proceed as herein outlined.

Langdon, J., Preston, J., Curtis, J., Seawell, J., Thompson, J., and Shenk, J., concurred.