**ESTATE of Albert H. KASISHKE et al., Plaintiff in Error,**

v.

**OKLAHOMA TAX COMMISSION, Defendant in Error.**

**No. 36431.**

Supreme Court of Oklahoma.

Nov. 8, 1955.

Rehearing Denied Feb. 28, 1956.

Application for Leave to File Second Petition for Rehearing Denied June 4, 1957.

Frank McCoy, John T. Craig and Robert P. Kelly, Pawhuska, for plaintiff in error.

R. F. Barry, E. J. Armstrong and W. F. Speakman, Oklahoma City, for defendant in error.

JOHNSON, Chief Justice.

On November 29, 1935, following written application on the part of Albert H. Kasishke, deceased, hereafter referred to as "Insured", the Equitable Life Assurance Society of the United States, hereafter referred to as "Insurer", in consideration of a single premium of $50,000 paid by insured, issued an insurance policy to insured. Under the terms and provisions of the policy and a typed agreement attached thereto as "Special Provision A" the insurer agreed to pay the insured in accordance with one of the methods provided in the policy, upon its maturity as an endowment November 15, 1945, the sum of $61,-345.93. It was provided in a typed agreement attached to the policy as "Special Provision B" that in the event of the death of insured prior to the maturity of the policy as an endowment, the sum of $61,345.93 would be paid to certain named beneficiaries as therein provided, which provision is not material to a decision of this case for the reason that the policy matured as an endowment prior to insured's death. The insured in the original contract reserved the right to change the beneficiaries, take the cash surrender value provided for in the policy and to hypothecate same.

On December 5, 1935, insured executed, on a form provided by the insurer, an instrument entitled "Duplicate of Absolute Assignment", which form recited that the insured thereby transferred and assigned the policy in question and all rights and benefits therein. However, the assignee's name was not inserted in the space provided on the form for the same and there was attached to the form at this place as a part thereof typed matter as follows:

"Olive M. Kasishke in trust for the beneficiaries of said policy for their use to the extent and in the manner and in accordance with their respective interests as specified in Special Provisions A and B attached thereto: Provided, that the trustee shall not change or revoke any of the provisions including Special Provisions A and B contained in said policy, or borrow money on said policy or surrender the same or any part thereof. There shall be left with the Society all dividends from such policy for the purpose of increasing the maturity value. By this assignment the insured is completely divesting himself of such policy and all the incidents of ownership therein; and the powers of the assignee as trustee are restricted as herein provided, the intent being to vest absolutely in the beneficiaries of the policy and of this trust, the benefits therein and herein provided, without right or power of revoking or changing the policy or this assignment and the trust hereunder, or any of the terms thereof or hereof. On the death of Olive M. Kasishke, Albert H. Kasishke, if living, shall be successor trustee, and if he be not living, or on his death, Albert H. Kasishke, Jr., shall be successor trustee, and the provisions hereof shall be binding on the trustee and each successor trustee. This assignment and the trust herein created shall not affect the mode of payments direct to the beneficiaries, as provided for in Special Provisions A and B, and not to or through the trustee. The consideration for this assignment is the love and affection that the assignor has for his wife and child; and the purpose is to make provision for them out of funds which the assignor now has available therefor."

It was provided in said Special Provision A attached to the policy that the amount becoming due insured upon maturity of the policy as an endowment could be left on deposit with insurer during insured's lifetime with interest accruing thereon to be paid monthly to insured. It was provided in the policy that insured had the right

to take the endowment upon its maturity if he elected to do so. The insured's wife was named as the principal beneficiary and his son, his children, the children of his children, his sisters and his mother-in-law and his father-in-law were named as alternative beneficiaries and it was provided that in the event of the death of the named beneficiaries the proceeds of the policy were to be paid to insured's executor or administrator. It is unnecessary to elaborate upon all of the various provisions of Special Provision A other than to say that it was possible for the provisions of said Special Provision to remain in effect for more than 21 years after 1935, or the life of the beneficiary in being in 1935.

On November 1, 1945, following the maturity of the insurance policy as an endowment, the insurer issued and delivered to insured an instrument entitled "Certificate of Deposit" wherein it was stated in substance that there was on deposit with insurer the sum of $63,770.87, which sum would be held during the lifetime of insured with interest thereon payable monthly to him, but that insured might withdraw the deposit or any part thereof at any time he elected to do so, and that any amount remaining on deposit as of his death would be held subject to the provisions of Special Provision A. The original insurance policy was cancelled upon the issuance of the Certificate of Deposit and apparently was never reinstated. Several months after the Certificate of Deposit was issued, insured made a request upon insurer to withdraw the deposit, which request was denied by the insurer on the grounds that the insured had through the instrument of December 5, 1935, given up his right to take the deposit, and that the insurer had erred in providing in the Certificate of Deposit that the insured had such right. The insured subsequently through an agent contended that the instrument of December 5, 1935, was void because same created a trust which could extend beyond the period permitted by Section 172, Title 60 O.S.1941. The insurer in turn contended that a trust was not in fact created and for said rea-

son the statute was not violated. The record shows that insured made a gift tax return to the Federal Government in connection with the policy in controversy and that while he didn't pay any gift taxes in connection with the return he claimed a gift tax credit of $50,000 in the return. The record shows further that insured paid gift taxes in connection with another trust, the provisions of which were similar to the provisions of the policy in question, and the corpus of which was made up of insurance policies as well as other properties, and that said gift taxes were refunded as a result of an action instituted in the United States District Court for the Western District, in which action the trust was held void because the duration thereof could exceed 21 years or the life of the beneficiaries of the trust.

The estate contends that the instrument of December 5, 1935, constitutes an absolute and unconditional assignment that served to divest insured of all incidents of ownership in the insurance policy in controversy, and for said reason under Rogers v. Oklahoma Tax Commission, Okl., 263 P.2d 409, the proceeds of the policy are not subject to estate tax as the proceeds of life insurance under the provisions of Section 989e(A) (6), Title 68 O.S.1951, even though a possibility that the policy might revert to insured existed at his death. The estate further contends that the policy represented life insurance when transferred on December 5, 1935, and for said reasons the proceeds thereof could not have been transferred to take effect in possession and enjoyment at or after death under the provision of Section 989e(A) (2) and (3), because said section does not cover a transfer of life insurance, and that the Tax Commission erred in rejecting its contentions and in holding contrary thereto.

 The instrument of December 5, 1935, did not effect a transfer of the insurance policy in controversy because thereunder no trustee or beneficiary obtained the right to exercise rights incident to ownership thereto. It was expressly

provided in said instrument that neither the trustees nor the beneficiaries should have the right to change the provisions of Special Provisions A or B or of the policy. This fact alone serves to distinguish the instant case from Rogers v. Oklahoma Tax Commission, supra, which case is further distinguished by the fact that the insured in the instant case reserved the right to take and did take the interest income accruing on the endowment after maturity thereof. If the instrument of December 5, 1935, changed the terms of the policy, the change was simply to make it impossible for the insured to change the beneficiaries named in the policy or to take the cash surrender value provided for therein or the value thereof upon maturity or to hypothecate same. The provisions of the instrument did not serve to deprive insured of the right to take interest income becoming due and payable monthly upon the endowment, for it was stated therein that payment should be made to the beneficiaries as provided in Special Provision A, and insured was one of the beneficiaries. The construction we place on the instrument under discussion is the same as that placed thereon by the parties. The construction of the parties is established by the fact that the insured from maturity of the endowment in 1945 until his death in 1950 took the interest income, and it seems no one objected to his doing so. If we were of the opinion that the provisions of the instruments under discussion are ambiguous on the proposition of whether insured had the right to take such income, which we do not find to be the case, we would be inclined to follow the practical construction that the interested parties placed on said instruments and therefore hold that insured had the right to take said income. The right to take the interest income was, of course, one of the substantial property rights created under the policy and since insured possessed and exercised this right at the time of his death, he at said time possessed the right to directly or indirectly convert the policy to his own use within

the purview of Section 989e(A) (6), the first paragraph of which section reads as follows:

"(6) To the extent of the excess over Twenty Thousand Dollars ($20,-000.00) of the amount receivable directly, in trust, or as annuities, by all other beneficiaries, or under a joint policy by the survivor, of the proceeds of life insurance, by virtue of policies taken out by the decedent upon his own life and in which, at the time of death, the decedent had a right, directly or indirectly, to change the beneficiary or to convert the policy to his own use."

Our construction of the above cited statute in the foregoing particulars is in keeping with the well-established estate tax principle that the releasing and transmitting of economic benefits in property through death is as a general rule treated as a taxable incident for estate tax purposes.

The Tax Commission contends that the policy in controversy represented an investment and not life insurance at all times because the investment features thereof predominated over the risk features. It is unnecessary to here determine whether the policy in its inception represented an investment as distinguished from life insurance, because we are of the opinion that the policy was transferred at and because of the death, and that the proceeds thereof were transferred under the provisions of Special Provision A and not by the instrument of December 5, 1935, and that the issue to be determined is, therefore, the character of the policy as of the date of insured's death.

It seems to be well-settled law that when an endowment policy with life insurance features matures as an endowment it becomes and represents a liquidated investment and not life insurance. In speaking of such a policy the Supreme Court of Arkansas in Central States Life Insurance

Co. v. Morris, 202 Ark. 969, 155 S.W.2d 333, 336, said:

"'* * * The obligation to pay in accordance with the terms of the contract is in force, but the policy of life insurance is no longer in force. It has been transformed into a liquidated debt by the happening of the contingent event theretofore provided for.'"

In In re Harper's Estate, 124 Mont. 52, 218 P.2d 927, it was held that a matured endowment represents a liquidated investment and not life insurance, and in McKee v. Columbus Mutual Life Insurance Co., 171 Okl. 250, 252, 42 P.2d 831, we held that a matured endowment policy does not represent life insurance.

In Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, the insured took out a single premium life insurance policy and a single premium annuity insurance policy. Neither policy was held to represent life insurance. The insured's wife, who was also his principal beneficiary, held the usual incidents of ownership in the policies during insured's lifetime, which situation is not present in the instant case. The insured possessed the right to take the annuity payments, which right he exercised. There existed also the possibility that the proceeds of the policies would be paid to insured's executor or administrator in the event the named beneficiary predeceased him. Upon the death of the insured the proceeds of the policies were held to be subject to estate tax as transfers, intended to take effect in possession or enjoyment at or after death under a Federal statute which is similar to Oklahoma's estate tax statute treating with said subject. The basis of the court's decision sustaining the assessed tax is summed up in the following quoted language taken from page 691 of 325 U.S., page 1325 of 65 S.Ct.:

"The decedent, in making disposition of $25,000 of his property through these two contracts, retained a valuable interest in that amount which was not extinguished until he died. He re-

tained not only the right to semi-annual payments under the annuity contract but also a contingent reversionary interest in the entire proceeds of both contracts. Had he survived his wife he could have exercised the attributes of ownership over the contracts, changing the beneficiaries or surrendering the contracts as he saw fit. If he had survived both his wife and his daughters the proceeds of the two contracts would automatically have been payable to his estate when he died. Thus the ultimate disposition of the proceeds of the contracts was suspended until the moment of decedent's death. Only then did the respective interests of the wife and daughters become fixed; only then were their interests freed from the contingency of the decedent's survival. His death was the decisive fact that terminated all of his potential rights and insured the complete ripening of the wife's interests. The transfer of the proceeds of the contracts having been effectuated finally and definitely at the decedent's death, as in the Hallock case, Section 302(c) requires that those proceeds be included within the decedent's gross estate."

In In re Harper's Estate, supra [124 Mont. 52, 218 P.2d 928], after holding that upon the maturity of an endowment contract it represents an investment and not life insurance, it was further held that, for said reason, upon the passing of the proceeds to the named beneficiaries as a result of insured's death the proceeds became subject to estate tax as a transfer intended to take effect at or after death. In the body of the opinion the court reasoned:

"Since this was an investment at interest during Mrs. Harper's lifetime and only passed to the named contingent beneficiaries upon her death, it was a transfer intended to take effect at or after death and should be taxed as such."

In a rather exhaustive opinion in In re Bass' Estate, 200 Okl. 14, 190 P.2d 800, we

held that under Oklahoma's estate tax statutes the incidence of the tax is the shifting and transfer of economic benefits from the dead to the living and that where the donor retains the right to take income from property transferred during his life, a releasing of this right upon his death furnishes an adequate basis for imposing an estate tax on the value of the property transferred. The leading case of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, and a number of other decisions of the United States Supreme Court are cited as sustaining the rule of law promulgated in the Bass case, supra.

■ For reasons stated, we are of the opinion that the proceeds of the policy are subject to estate tax under the provisions of Section 989e(A) (2) and (3), supra, and the Order of the Tax Commission assessing estate taxes is affirmed.