In re Stephen E. TURNER and Pamela J. Turner, Debtors.

Stephen E. TURNER and Pamela J. Turner, Appellants,

v.

Richard MARSHACK, Chapter 7 Trustee; United States Trustee, Appellees.

BAP No. CC–93–2289–OVRi.

Bankruptcy No. SA–92–22835–JW.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided Aug. 25, 1995.

Darvy Mack Cohan, La Jolla, CA, for appellants.

Joel S. Miliband, Irvine, CA, D. Edward Hays, Irvine, CA, for Richard Marshack.

Before: OLLASON, VOLINN and RIEGLE,[1] Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge:

This appeal concerns Debtors' claimed exemption of an annuity. The bankruptcy court sustained the objection of the bankruptcy trustee to the claimed exemption, citing *In re Pikush*, 157 B.R. 155 (9th Cir.BAP 1993), *aff'd*, 27 F.3d 386 (9th Cir.1994).[2] Debtors timely appealed the court's final order entered on November 1, 1993. **We Remand.**

## FACTS AND PROCEDURE BELOW

Stephen and Pamela Turner ("Debtors") filed under Chapter 7 of the Bankruptcy Code,[3] on November 20, 1992, and claimed an annuity 100 percent exempt either as an unmatured life insurance policy or as a private retirement plan, pursuant to the California exemption statutes, Cal.Civ.Proc.Code §§ 704.100(a), 704.115(a)(1) and (b) (West 1994).

Eight years before filing a bankruptcy petition, debtor Stephen Turner ("Turner") purchased a single-premium deferred annuity in his name only. He was then a 36–year–old self-employed real estate broker and law school graduate, supporting a family which, by 1993, consisted of a wife and two children. He purchased the annuity for $225,000 from Trident Assurance Company, Ltd.[4] The annuity provided that Turner would receive the sum of $13,668.50 per month (approximately $162,000 per year) for life commencing upon his 60th birthday, on March 5, 2008, 24 years hence. As long as the annuitant was living, the "owner" (who was, apparently, Turner) had the right to assign the contract, either absolutely or as collateral security. If Turner died before March 5, 2008, the company was not bound to pay anything to anyone on the annuity. The application for the annuity contained the writing that there was "no death benefit before or after maturity date."

The annuity contained no refund or cash surrender provision, and the application for the annuity contained the writing that the policy had "no cash surrender value or right to refund during life." The annuity did not provide for a right to borrow against invested annuity funds. Thus, Debtors contended that the annuity had no current value. The Chapter 7 Trustee ("Trustee") asserted that despite Debtors' contention, the annuity did have loan value and that Turner had taken loans against the policy, and argued that the contract provided that the maturity date could be accelerated, so it would have value to a potential assignee.

Turner stated that he purchased the annuity with the intention that it would be his sole retirement plan. Turner had also purchased term life insurance for his family, but it had lapsed prior to the bankruptcy filing.[5]

1. Hon. Linda B. Riegle, Chief Bankruptcy Judge for the District of Nevada, sitting by designation.

2. The Ninth Circuit affirmed on the basis of the Bankruptcy Appellate Panel opinion.

3. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), Rules 1001–9036.

4. Turner's affidavit states that the purchase price was paid in $25,000 cash, a Certificate of Deposit and a note secured by a deed of trust.

5. The record does not indicate, nor do the parties raise on appeal, whether Turner purchased the life insurance from Trident in conjunction with the annuity. Insurance risk may be neutralized when an insured takes out a life insurance policy at the same time as an annuity contract. 1 COUCH ON INSURANCE, § 2.7 at 287 (2d ed. rev. 1984); *Helvering v. Le Gierse*, 312 U.S. 531, 541,

Trustee objected to the claimed exemption, and the matter was heard on three separate dates. Debtors presented testimony and expert declaration evidence regarding the nature of the policy and the maturity date and loan value issues.

At the continued hearing on July 29, 1993, the bankruptcy court did not rule on the applicability of § 704.115. The court concluded that the annuity was a matured annuity policy exempt pursuant to § 704.100(c) to the extent reasonably necessary for the support of Turner, his spouse and dependents. The amount of exemption issue was set over for evidentiary hearing.

Meanwhile, the Bankruptcy Appellate Panel ("BAP") issued its decision in *In re Pikush*, 157 B.R. 155 (9th Cir. BAP 1993), *aff'd*, 27 F.3d 386 (9th Cir.1994). Thereafter, the bankruptcy court ordered a rehearing on October 7, 1993. In its order of November 1, 1993, the bankruptcy court vacated its prior oral ruling in its entirety and ruled that the objection would be sustained in its entirety, in accordance with the decision of *Pikush*. However, *Pikush* concerned only a § 704.100 issue, and the bankruptcy court's order made no specific determination as to the § 704.115 claim.

Debtors filed a timely notice of appeal on November 8, 1993. However, they did not include a statement of issues within ten days, as required by Fed.R.Bankr.P. 8006. At the time of filing their reply brief, on October 3, 1994, Debtors also filed "Supplemental Excerpts of Record" which consisted of the statement of issues. Furthermore, the statement of issues did not include one issue raised in their opening brief, i.e., whether the annuity constituted Turner's private retirement plan and was exempt pursuant to § 704.115.

### ISSUES

I. Whether Debtors' untimely statement of issues is cause to affirm the bankruptcy court order or defeat appellate jurisdiction.

II. Whether the bankruptcy court erred in determining that Turner's annuity did not qualify for exemption as a life insurance policy as provided by Cal.Civ.Proc.Code § 704.100 (West 1994).

III. Whether Debtors waived the § 704.115 issue by not listing it in the statement of issues, or if it is otherwise improperly before the panel.

### STANDARD OF REVIEW

■ The scope of a statutory exemption involves construction of California law, which we review *de novo*. *In re Bloom*, 839 F.2d 1376, 1378 (9th Cir.1988); *Pikush*, 157 B.R. at 156.

### DISCUSSION

### I. Untimely Statement of Issues

■ Debtors filed the notice of appeal on November 8, 1993, but did not file the statement of issues until October 3, 1994, almost one year later, at the same time they filed their reply brief. They did not request an extension of time to file the statement, nor did they provide an excuse for this delay, either in their opening or reply briefs.

Trustee contends that failure to file the statement of issues led to an incomplete record which is cause to affirm the bankruptcy court order. Trustee further contends that failure to include the statement of issues led to a defective appeal which divested the panel of jurisdiction to hear this appeal.

Fed.R.Bankr.P. 8006 requires appellants to file a statement of issues within 10 days after filing a notice of appeal.

Fed.R.Bankr.P. 9006(b)(1) states in part: [W]hen an act is required or allowed to be done at or within a specified period by these rules ... the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 8001(a) provides in part:

61 S.Ct. 646, 650, 85 L.Ed. 996 (1941). In this case, however, the life insurance policies are not at issue, and the annuity stands alone, since

Debtors had not paid the life insurance premiums for approximately one year before they filed bankruptcy.

Failure of an appellant to take any step other than the timely filing of a notice of appeal *does not affect the validity of the appeal,* but is ground only for such action as the . . . panel deems appropriate, which may include dismissal of the appeal.

(Emphasis added.)

██ Thus, failure to timely file the statement of issues is not a jurisdictional defect. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 707 (9th Cir.1986); *In re Fitzsimmons,* 920 F.2d 1468, 1471 (9th Cir.1990). Trustee's contention in this regard is without merit.

██ Furthermore, the panel finds that the record on appeal and the statement of issues are distinct, per Fed.R.Bankr.P. 8006. Failure to file a timely statement of issues does not give cause to affirm the trial court in the sense that it does not render the panel unable to have a complete understanding of the case otherwise presented in the briefs and the record. *See In re Anderson,* 69 B.R. 105, 109 (9th Cir.BAP 1986).

██ However, the panel may impose sanctions including dismissal of the appeal upon appellants who fail to take timely steps to prosecute the appeal. *Greco v. Stubenberg,* 859 F.2d 1401, 1404 (9th Cir.1988). Appellants are usually required to show legal cause why the appeal should not be dismissed. In determining whether to dismiss an appeal on such grounds, the panel must consider (1) alternative measures in lieu of dismissal, and (2) whether the conduct giving rise to the dismissal was caused entirely by the party's attorney, for the harsh sanction of dismissal mostly affects the client. *In re Hill,* 775 F.2d 1385, 1386 (9th Cir.1985). Whether or not a party has acted in bad faith is a key factor when ruling on a motion to dismiss based on a party's failure to comply with Bankruptcy Rule 8006. *Fitzsimmons,* 920 F.2d at 1473–74.

██ In this case, there is no reason for the delay provided by Debtors or in the record. On the other hand, there is no allegation of bad faith on the part of Debtors.

██ Debtors framed the issues in their opening brief. Trustee had the opportunity to respond and did respond to all of the issues. Therefore, Trustee was not prejudiced by Debtors' failure to file the statement of issues. *See Energrey Enterprises, Inc. v. Oak Creek Energy Systems, Inc.,* 119 B.R. 739, 741 (E.D.Cal.1990), *aff'd,* 956 F.2d 1167 (9th Cir.1992). In addition, Trustee did not separately move to dismiss the appeal on this basis but, rather, raised this argument in his opening brief, which was filed on September 23, 1994, about 10 months after the notice of appeal was filed.

Since Debtors are represented by counsel, dismissal would be too severe a sanction because it would impact their appeal when they have not been shown to have been at fault. We decline to dismiss the appeal on the basis of untimely statement of issues. In addition, the panel declines to order any alternative sanctions in this matter, considering the posture of this appeal and the lack of prejudice to Trustee.

## II. Is the annuity exempt life insurance?

██ California has enacted legislation "opting out" of the federal exemption scheme of 11 U.S.C. § 522. *See* Cal.Civ.Proc.Code § 703.130 (West 1994). Consequently, substantive issues regarding the allowance or disallowance of a claimed exemption are governed by California law. *In re Moffat,* 107 B.R. 255, 258 (Bankr.C.D.Cal.1989), *aff'd,* 119 B.R. 201 (9th Cir. BAP 1990), *aff'd,* 959 F.2d 740 (9th Cir.1992).

██ The state exemption statutes are to be liberally construed, for their manifest purpose is that of "saving debtors and their families from want by reason of misfortune or improvidence." *In re Crosby's Estate,* 2 Cal.2d 470, 41 P.2d 928, 930 (1935) (citing *In re Millington's Estate,* 63 Cal.App. 498, 218 P. 1022, 1023 (1923)). They protect income and property needed for the subsistence of the judgment debtor and his or her family. Cal.Law Revision Comm'n, Tentative Recommendation Proposing the Enforcement of Judgments Law, at 2076 (Oct.1980). The exemption provisions were drafted to "accommodate both the interest of the judgment debtor in maintaining a basic standard of

living and the interest of the judgment creditor in satisfying the money judgment." *Id.*

Section 704.100 provides an exemption for life insurance policies. This section provides in pertinent part:

> (a) Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.
>
> (b) The aggregate loan value of unmatured life insurance policies (including endowment and annuity policies) ... is exempt in the amount of four thousand dollars ($4,000). If the judgment debtor is married, each spouse is entitled to a separate exemption under this subdivision, and the exemptions of the spouses may be combined, regardless of whether the policies belong to either or both spouses....
>
> (c) Benefits from matured life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

Cal.Civ.Proc.Code § 704.100 (West 1994).

This provision evolved from a broader version. Initially, 1868 CAL.STAT. ch. 406 § 1, at 500, provided that the exemption of life insurance proceeds was limited to any benefits accruing from payment of a maximum $500 dollars' annual premium from a life insurance policy on the debtor's life. *Recent Developments*, 14 STANFORD L.REV. 599, 600 n. 5 (May 1962). A 1901 amendment retained the $500 limitation, but broadened the language to cover benefits accruing from "any life insurance." *Id.* at 600; 1901 CAL.STAT. ch. 28 § 1, at 23. The latter version was retained

in the 1935 and 1970 amendments. *See* 1935 CAL.STAT. ch. 723 § 19, at 1970, and former Cal.Civ.Proc.Code § 690.19; 1970 CAL.STAT. ch. 1523 § 39, at 3074, and former Cal.Civ. Proc.Code § 690.9. Through the years, it was recognized that the exempt benefits deriving from a $500 annual premium, could vary significantly. The purpose of the 1982 amendment to this provision, which created § 704.100, was to eliminate the "arbitrary feature of existing law which exempts benefits to the extent represented by a $500 annual premium," and which has "no relation to the needs of the judgment debtor or the judgment debtor's family." CAL.LAW REVISION COMM'N, *supra.*, at 2083.

Thus, § 704.100 focused on the loan value, i.e., the amount of assets available to the debtor, rather than the size of premiums or death benefits. It is generally recognized that a loan based on an insurance policy is really an advancement on the cash value. *Board of Assessors of the Parish of Orleans v. New York Life Ins. Co.*, 216 U.S. 517, 521–22, 30 S.Ct. 385, 385, 54 L.Ed. 597 (1910). A creditor should not be able to reach the cash surrender value of a policy because the debtor might, in the future, be uninsurable or insurable only at a prohibitive premium. CAL.LAW REVISION COMM'N, *supra.*, at 2082.[6]

Neither § 704.100 nor its legislative history clarify what the statute means when it states that "annuity policies" are also exempt. *Pikush* restricted the exemption provision of § 704.100 to life insurance policies, holding that an annuity is only exempt if it is a life insurance policy with "the essential features of an annuity."[7] 157 B.R. at 157–58.[8]

---

**6.** In this case, the facts were disputed whether loans Turner had taken were against the policy. Turner alleged that there was no loan or cash surrender provision, and this was substantiated by the document itself. If the Turner annuity was found to be unmatured life insurance, it potentially could be exempt in its entirety. However, it cannot be said that such an exemption would violate the purpose of the California exemption statutes on that basis alone, for the future benefits might be less than what would be necessary for the support of Turner and his family in the year 2008.

**7.** In so doing, the BAP declined to apply to the exemption statutes the broader interpretation of

the licensing and regulation statute which provides that life insurance "includes insurance upon the lives of persons or appertaining thereto, and the granting, purchasing, or disposing of annuities." *See* Cal.Ins.Code § 101 (West 1994); *Pikush*, 157 B.R. at 159 (citing *In re Barr's Estate*, 104 Cal.App.2d 506, 231 P.2d 876, 879 (1951)).

**8.** The panel saw the language of the statute as restricting it to this interpretation, i.e., the parenthetical placement of the word "annuities" following the words "life insurance."

Thus, the bankruptcy court interpreted *Pikush* to mean that it had no discretion to determine that a contract called an "annuity" could be exempt life insurance. The bankruptcy judge stated:

> I read the *Pikush* case as purely one of statutory construction.... Now, obviously, I don't agree with its interpretation, because I ruled in your favor at the previous hearing.... I interpreted the California statute in accordance with its plain meaning. It says, annuities are exempt, *and this contract says annuity;* therefore, it's exempt. It wasn't a very difficult decision to make.... Those allegedly wiser than the trial judge determined that an annuity is not necessarily an annuity, even though the document says it's an annuity and the statute says annuities are exempt. I feel bound by the *Pikush* decision.... (emphasis added).

■ Implicit in the *Pikush* holding is the inverse: an annuity that qualifies for, or is the functional equivalent of, life insurance is also exempt. *See Id.* at 158 and n. 8. This further interpretation of *Pikush* is necessary because to hold otherwise would effectively write "annuity policies" out of the exemption statutes. To hold otherwise would be to beg the argument that once an insurance policy matures with an annuity settlement, the annuity is no longer a life insurance policy.[9] *Pikush* held that such a settlement feature does not preclude the contract from being considered a life insurance policy for exemption purposes. 157 B.R. at 157. But *Pikush* did not hold that only life insurance policies that are converted into annuities upon settlement are the type of annuities that are exempt, although in practice this might turn out to be the case.[10]

Some authorities consider annuities to be investments and not insurance because of the type of risks involved:

> [Life insurance] involves payments of stated amounts, known as premiums, by the insured over a period of years in return for which the insurer creates an immediate estate in a fixed amount in the event of his death while in good standing. These benefits are to be paid to some designated person other than the insured, although the policy may provide that after the expiration of a certain period of time, the insured may elect to receive certain of these amounts personally. There is an immediate hazard of loss thrown upon the insurer, with the required performance by the insured of certain obligations at designated intervals of time.

An annuity contract is almost diametrically opposed to this. The person designated as the recipient is the person paying the money. He pays in a fixed sum usually at one time, in return for which the company must then perform a series of obligations over a period of years, at designated times. The hazard of loss is no longer upon the company but upon the recipient who may die before any benefits are received. Instead of creating an immediate estate for the benefit of others, he has reduced his immediate estate in favor of future contingent income. The positions

---

9. The same goes for an endowment policy. "[W]hen an endowment policy with life insurance features matures as an endowment it becomes and represents a liquidated investment and not life insurance." *Estate of Kasishke v. Okla. Tax Comm'n.,* 311 P.2d 804, 808 (Okla. 1955). *See also* 1 Couch on Insurance § 1.46, at 117 (2d ed. rev.1984) (upon the maturity of an endowment policy, the rights of any named beneficiary terminate and the insurer is obligated to the named insured, not as an insured, for the relation of debtor and creditor then comes into existence).

10. While we recognize that annuities have become popular tax-sheltered investments, we cannot ignore the fact that there are various types of annuities and that some have life insurance char-

acteristics. Life insurance policies have also been used as investment and saving devices. So, the fact that an annuity is an investment vehicle should not be wholly determinative of its character apart from life insurance. Moreover, the Supreme Court has stated that "life insurance is an evolving institution" and concepts of insurance or annuity cannot be fitted into molds. *Securities and Exchange Comm'n v. Variable Annuity Life Ins. Co. of America,* 359 U.S. 65, 71, 79 S.Ct. 618, 622, 3 L.Ed.2d 640 (1959). Since the cash values of the life insurance contract are often turned into annuity contracts at retirement, or the death proceeds of the life insurance contract are settled on an annuity for life option, "there is an intimate relationship between life insurance and annuities." Mark R. Greene, Risk and Insurance, at 464 (4th ed. 1977).

are almost exactly reversed. Annuity contracts must, therefore, be recognized as investments rather than as insurance.

1 JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 84, at 295 (1981).

*Pikush* held that three single-premium, immediate-payment annuities were not life insurance policies and, therefore, not exempt, because they involved no "risks, contingencies or unknown events . . . [r]ather, they are an investment that the debtor made, under which sums certain are payable at fixed dates for a fixed period." 157 B.R. at 159. The annuities in *Pikush* were for fixed amounts to be paid commencing within one or two months of purchase, over fixed periods, and payments were not contingent on any event or condition.

Following *Pikush,* the Ninth Circuit analyzed another annuity policy under the California exemption statutes in *In re Bernard,* 40 F.3d 1028 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995). The annuity provided for a guaranteed stream of income over the term of the contract, had no contingencies that could divest the debtors of their right to receive payment, and contained a death benefit to debtor's beneficiaries. The Court of Appeals held: "As noted in *Pikush,* an annuity of this nature *is an investment, not a life insurance policy."* Id. *at 1032 (emphasis added).*

■ Debtors contend that Turner's annuity is life insurance because it does involve risks—it is conditioned upon Turner's life, i.e., his survival for a specific period, and is contingent upon the continuation of his life.

■ The payments under Turner's annuity were contingent on his surviving until March 5, 2008, and would be made only as long as he lived. In the event he lived for several years beyond age 60, he would receive $162,000 per year, an amount which could greatly exceed the purchase price of $225,000. His was a "life" annuity, which pertained to Turner's life. From a certain point of view, the contingencies are greater in this case than in an ordinary life insurance contract where death and entitlement are certainties. Here the insurance wager may result in Turner receiving nothing. Or, if Turner survived, the company's risk of payment is greater than the usual kind of annuity where the annuitant has an interest only in payments themselves and not in any principal fund or source from which they are derived. 4 AM.JUR.2D *ANNUITIES* § 1 (1962).[11]

■ Finally, *Pikush* instructed that public policy and legislative intent allow debtors to shelter some assets for their families' livelihood upon a loss, but that they should not be entitled to shelter unlimited assets *for themselves.*[12]

Unlike the circumstances of *Pikush* and *Bernard,* there is no evidence that Turner purchased his annuity "as part of a process that has come to be known as pre-petition planning." *Bernard,* 40 F.3d at 1030. The Bernards had extracted most of the value from their home by borrowing against the equity, and then just ten days before filing for bankruptcy, they bought the annuity with the borrowed money. *Id.* The timing of the purchase was also a concern to the *Pikush* panel: there, the debtor had purchased three annuity contracts over the seven months prior to filing bankruptcy. When debtors at-

---

11. Turner's policy was not a "variable" annuity. Where the rate of return is dependent on the success or failure of the investment, an annuity is more like an investment than life insurance. *See* APPLEMAN, *supra.,* at 320.

12. We leave to the bankruptcy court the consideration of whether the Turner annuity can be life insurance without a death benefit. "A key feature of insurance is that it indemnifies loss." *Nationsbank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 810, 817, 130 L.Ed.2d 740 (1995). In the case of life insurance, the contingent or unknown

event is mortality. *Pikush,* 157 B.R. at 156. Specifically, a life insurance policy is a "contract whereby the insurance company agrees to insure or indemnify the beneficiary against the death of the insured; it is a contract by which the insured protects the beneficiary against loss accruing by the early or premature death of the insured." *Barr's Estate,* 231 P.2d at 879. Even endowment-type insurance policies are still life insurance because their "chief constituent part [is] the undertaking to pay on the death of the assured within the specified term." *Briggs v. McCullough,* 36 Cal. 542, 551 (1869).

tempt to utilize the exemption laws to shield assets that rightfully should be subject to distribution to their creditors, they abuse the bankruptcy system as well as the purpose of the exemption provisions. In contrast, Turner purchased his annuity eight years before the filing of the petition. It is unlikely that he was planning his bankruptcy at that time.

In summary, life insurance has been defined in California as "insurance upon the lives of persons or appertaining thereto, and the granting, purchasing, or disposing of annuities." *See* Cal.Ins.Code § 101 (West 1994). *Pikush* instructed that for purposes of the exemption statutes, however, a court must make a separate factual determination of an annuity's character: to qualify for an exemption under § 704.100, the policy must be life insurance. There are annuities that appertain to human life (life annuities) [13] and those that do not (annuities certain). *See Texas Commerce Bank v. Garamendi*, 11 Cal.App.4th 460, 14 Cal.Rptr.2d 854, 865 (1992); *see also* CLYDE J. CROBAUGH, ANNUITIES AND THEIR USES, at 32 (1933). Conversely, then, the use of the phrase "including ... annuity policies" in § 704.100 would mean that annuities that are contingent upon human life may be exempt.

*Pikush* and *Bernard* instruct that there is some stretching room for an annuity that would be life insurance. Accordingly, we hold that a determination of whether an annuity is exempt life insurance under the California exemption statute requires a factual analysis on a case by case basis.

In the instant case, the bankruptcy court failed to make the necessary factual analysis to determine if the Turner annuity was an annuity or a life insurance policy. In other words, the bankruptcy court did not find that the policy was an annuity, only that the policy was labeled an annuity.

Some of the issues which need to be addressed to make this determination are the following: 1) Is the annuity truly contingent; 2) Can Turner accelerate the maturity date; 3) May Debtors borrow against the policy; 4) Who owns the policy; 5) Was the payment of the premium consistent with an investment or a payment; 6) Was Trident licensed to sell life insurance in California; 7) What was the opinion of the experts; 8) What provisions of the application are also part of the policy; and 9) Must life insurance in California contain a death benefit?

### III. Is the § 704.115 issue properly before the Panel?

Section 704.115 provides an exemption under California law for a "private retirement plan." Cal.Civ.Proc.Code § 704.115 (West 1994).

Trustee contends that Debtors have waived the § 704.115 issue by failing to include it in their statement of issues. After Debtors raised and discussed the § 704.115 issue in their opening brief—an issue which had been argued before the trial court—they failed to include it in the tardily filed statement of issues. Trustee objected to the issue being raised on appeal in Debtors' opening brief.

An issue that is not inferable from those listed on the statement of issues, pursuant to Fed.R.Bankr.P. 8006, will be deemed waived. *In re Freeman*, 956 F.2d 252, 255 (11th Cir.1992) (citing *Energrey Enterprises v. Oak Creek Energy Systems, Inc.*, 119 B.R. 739, 741 (E.D.Cal.1990)). Since Debtors' statement of issues superseded their opening brief there is reason to believe that they waived the issue. Furthermore, it is not inferable from the § 704.100 issue, which concerned exemptions for life insurance policies. Nevertheless, Debtors did list this issue and argued it in their opening brief as well as in their reply brief. We believe their failure to list it on the statement of issues was mere inadvertence. Trustee had the opportunity to respond to this issue in his opening brief.

There is sufficient briefing of the § 704.115 issue and evidence on this issue in the record. However, the facts are in dispute, particularly concerning whether the annuity had loan value and whether the maturi-

---

**13.** " 'Tis said that persons living on annuities are longer lived than others.' " JAMES B. LEWIS, THE ESTATE TAX § 8, at 165 (4th ed. 1979) (quoting George Gordon Byron's epic poem, DON JUAN).

ty date could be accelerated. As stated above, the bankruptcy court did not make these necessary factual findings.

Furthermore, the bankruptcy court's order of November 1, 1993 did not refer to the issue of whether or not the annuity was exempt as a private retirement plan pursuant to § 704.115, even though Debtors had exempted it under this statute as well. The order only sustained Trustee's objection to the claimed exemption *in its entirety* "in accordance with the decision of *In re Pikush.*" However, *Pikush* only addressed the § 704.100 life insurance issue. The court order further vacated its prior oral ruling made at the second hearing *in its entirety.* (The court's oral ruling had found that it was a matured annuity policy which came within the exemption provisions of § 704.100(c), and implicitly rejected the § 704.115 claim.) When the bankruptcy court vacated its oral ruling, it apparently failed to then rule as to the § 704.115 claim.

■ An appellate court lacks jurisdiction over orders that are not final as to the merits of a claim. *In re Frontier Properties, Inc.,* 979 F.2d 1358, 1362 (9th Cir.1992). Therefore, we decline to consider this issue on appeal, but remand the matter to bankruptcy court for further proceedings, findings of fact and conclusions of law and/or clarification of its judgment concerning this issue.

### CONCLUSION

Turner's "annuity," while labeled as such, may have certain features that qualify it as life insurance for purposes of the California exemption statute, § 704.100. However, the bankruptcy court did not conduct an analysis and make factual findings necessary to make the determination as to the character of Turner's policy. Therefore, we remand on the § 704.100 issue.

The procedure below indicates that the bankruptcy court did not finally rule on the alternative basis for exemption—whether the Turner annuity was exempt as a private retirement plan pursuant to § 704.115. Therefore, we remand for proceedings consistent with a determination of that issue.

**REMANDED.**

VOLINN, Bankruptcy Judge, concurring:

I concur with the majority ruling as to remand. I write separately to note the following points:

I believe that the transaction before us is an annuity contract without any characteristic of life insurance. The exemption under § 704.100 relating to life insurance is therefore not an issue.

We are unable to rule whether the contract constitutes a private retirement plan exempt under Cal.Civ.Proc.Code sec. 704.115 (West 1994) because of questions regarding contract loan value and maturity date acceleration, and because of separate jurisdictional issues. However, I believe that we do have jurisdiction to the extent necessary to order a remand and concur with the majority in this respect.