**In re Joyce A. ELLIS, Debtor.**

No. 01–42090.

United States Bankruptcy Court, S.D. Illinois.

March 4, 2002.

784

Michelle Vieira, Carbondale, IL, for Movant.

Marcus H. Herbert, Carbondale, IL, for Debtors/Respondent.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The debtor in this case seeks to exempt a whole life insurance policy that provides for the payment of an annuity when the debtor reaches the age of 65. The debtor's claim is premised on the Illinois provision exempting a debtor's interest in a retirement plan. *See* 735 Ill. Comp. Stat. 5/12–1006. The trustee objects that the debtor's policy is an insurance policy, not an annuity, and, as such, fails to qualify under the Illinois "retirement plan" exemption. The trustee, therefore, requests turnover of the surrender value of the policy for the benefit of the debtor's estate.[1]

---

1. The debtor additionally claimed the policy as exempt under the "insurance policy" ex-emption of 735 Ill. Comp. Stat. 12–1001(f). However, this exemption is not applicable

The policy at issue is identified as a "Flexible Premium Adjustable Life Insurance" policy issued by Modern Woodmen of America ("Modern Woodmen"). It provides for a "base insurance amount" of $100,000, with a "death benefit" of $102,533.59 as of October 23, 2001.[2] In addition, the policy provides a "retirement benefit" described as "monthly income for life (10 year certain & Life Option)." (Debtr. Ex. A, Certif. No. 6920886, "St. of Certif. Cost and Benefit Info.") The policy states that Modern Woodmen will pay the death benefit to the debtor's beneficiary if she dies prior to the policy's maturity date of September 1, 2016. However, if the debtor is living on the maturity date, the policy will terminate and Modern Woodmen will pay any account value to the debtor.[3] (*See* Ex. A, at 5.)

The policy sets forth "optional methods of settlement" for the payment of amounts due at maturity, including the option selected by the debtor of "life income with guaranteed period." (Ex. A, at 10.) This option may be revoked or changed by the debtor at any time upon a written request. (*See id.*) The debtor, moreover, is entitled to surrender her policy in exchange for the account value of the policy, less any indebtedness, upon proper application.[4]

The debtor's policy specifies a "planned premium" of $150 quarterly or $600 annually. However, premiums "may be paid at any time and in any amount," and the policy will remain in effect so long as the "account value ... equals or exceeds [a] minimum required account value." (Ex. A, at 6.) In addition, the policy provides that "excess premiums" will be refunded, as necessary, in order for the policy to qualify for the Internal Revenue Code's "exclusion of death benefits from gross income for flexible premium life insurance contracts." (Ex. A, at 6.)

The debtor asserts that her "sole purpose" in entering into the policy with Modern Woodmen was to provide herself with retirement income, not life insurance. She maintains that, as a single woman with no children,[5] she had need of a policy paying a fixed amount at retirement and, for this reason, purchased the present policy, which she describes as a "retirement annuity with life insurance wrapped around it."

The trustee disagrees with the debtor's characterization of the policy as a "retirement annuity" and asserts that the annuity provision at issue is merely an alternative method of obtaining payment under what is essentially an insurance policy. As the trustee notes, the debtor may (1) leave the policy in place and it will pay at death, (2) surrender the policy and receive an immediate payment of its cash value, or (3) begin to surrender the policy for a monthly amount payable at age 65. However, the trustee argues, despite the fact the debtor may choose to receive the policy's value through an annuity, it remains a policy of insurance and does not constitute

because the beneficiary of the policy, the debtor's cousin, is not a person "dependent upon the insured" as required for exemption under § 12–1001(f). *See In re McLaren,* 227 B.R. 810 (Bankr.S.D.Ill.1998).

2. The "death benefit" consists of the policy's "specified amount" plus the "account value." (Debtr. Ex. A, Certif. No. 6920886, at 5.)

3. The "account value" is determined based on a formula that credits premiums received

from the insured and deducts any withdrawals from the policy's surrender value. (Ex. A, at 7.)

4. At the time of the debtor's bankruptcy filing, the surrender value of her policy was $4,049.

5. The debtor, who was 47 years of age when she filed her bankruptcy petition in September 2001, entered into the policy in November 1992.

an annuity for purposes of the Illinois exemption for retirement plans.

Section 12–1006(a), at issue in this case, exempts a debtor's

> interest in or right . . . to the assets held in or to receive pensions, *annuities*, benefits, distributions, refunds of contributions, or other payments under a retirement plan . . . if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986 . . . .

735 Ill. Comp. Stat. 5/12–1006(a)(emphasis added). The statute further specifies that "retirement plan" includes, among other things:

> (1) a stock bonus, pension, profit sharing, *annuity*, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan; [and]
>
> . . . . .
>
> (3) an individual *retirement annuity* or individual retirement account[.]

735 Ill. Comp. Stat. 5/12–1006(b) (emphasis added).

 Whether a whole life insurance policy with an annuity payable at retirement constitutes an "annuity" for purposes of the Illinois exemption for "retirement plans" appears to be an issue of first impression under Illinois law. Although both life insurance and annuity policies are is-

sued as contracts with an insurance company, the two are distinguishable in that a life insurance policy contains an element of "risk," while an annuity policy has the character of an "investment." As set forth in a noted treatise on insurance law, "[life insurance] involves [the payment] of stated amounts, known as premiums, by the insured over a period of years[,] in return for which the insurer creates an immediate estate in a fixed amount in the event of [the insured's] death[.]" 1 John A. Appleman & Jean Appleman, *Insurance Law & Practice*, § 84, at 295 (1981). Thus, there is "an immediate hazard of loss" upon the insurer, with the required performance by the insured of certain obligations at designated intervals of time. *Id.* By contrast, under an annuity contract, the insured pays in a fixed sum, usually at one time, in return for which the company must perform a series of obligations, paying a fixed amount over a period of years at designated times. "The hazard of loss is no longer upon the company[,] but upon the recipient who may die before any benefits are received." *Id.* For this reason, annuity contracts must be recognized as investments rather than as insurance. *Id.; see also In re Turner*, 186 B.R. 108, 115–16 (9th Cir. BAP 1995) (quoting *Appleman on Insurance*, § 84, at 295).

 Whole life policies, such as that purchased by the debtor here,[6] combine

---

**6.** Although identified by the debtor as a "whole life" policy, the debtor's policy is more properly characterized as a "universal life" policy. "Cash value life insurance," a generic term describing the category of life insurance contracts that provide both a term insurance element and a savings element, were traditionally described as "whole life insurance," which derived from the fact that all such policies were, in theory, designed to provide coverage for the "whole life" of the insured. *See* Kyle D. Logue, *The Current Life Insurance Crisis: How The Law Should Respond*, 32 Cumb. L.Rev. 1, at \*67 n. 42 (2001–

2002). Today, because almost all cash value life policies are designed to cover the insured-investor for his or her entire life, the term "whole life insurance" has come to mean a particular type of cash value policy—one that has, among other things, fixed annual premiums and a fixed death benefit. *Id.* The other major classes of cash value policies are "universal life" and "variable life" policies. What distinguishes "universal life" insurance from traditional "whole life" is that "universal" allows variation in the amount of premiums that are paid in each policy period and in the

some of the features of "insurance" with those of "annuities." The fact that an "insurance" policy matures with an annuity settlement, however, does not preclude that policy from being an insurance policy. *See Turner,* 186 B.R. 108, 115. Rather, the particular features of the policy must be examined to determine whether it involves an element of "risk"—and thus constitutes insurance—or whether it has the character of an "investment" so as to qualify as an annuity. *See Turner,* at 117.

■■■■■ From an examination of the debtor's policy it is evident that, despite the annuity settlement option selected by the debtor, the policy creates an "insurance risk" for the insurer, Modern Woodmen, rather than an "investment" on behalf of the debtor. First, under the policy, the debtor is obligated to make premium payments over a period of years rather than a fixed amount at the inception of the policy. Indeed, while the amount of the debtor's premium payments may vary, the policy specifically prohibits the debtor from making payments in excess of the amount required to qualify under the "death benefits" tax exclusion for life insurance contracts. In addition, the debtor's payment of such premiums obligates Modern Woodmen to pay an immediate death benefit of at least $100,000 if the debtor should die before attaining the age of 65. The risk of loss, therefore, is on the insurer, Modern Woodmen, who must pay out an amount far in excess of that received through the payment of premiums in the event of the debtor's death before the policy's maturity date.

While a different result might obtain if the debtor had filed her bankruptcy case

death benefit options. *Id.* Because the debtor's policy here provides for variation in the amount of premiums that are payable in a policy period and for options in the payment

after the policy had matured with the annuity settlement selected by her, a debtor's entitlement to exemptions in a bankruptcy case is determined as of the commencement of the case. *See* 11 U.S.C. § 522(b)(2)(A); *In re Sheets,* 69 B.R. 542, 543 (Bankr.W.D.N.Y.1987). At the time the debtor filed her petition, the policy at issue had the characteristics, not of an annuity policy paying out a fixed amount to the debtor over time, but of an insurance policy entitling the debtor's beneficiary to an immediate payment in the event of the debtor's death. Accordingly, the debtor's policy does not constitute an "annuity" for purposes of the exemption provision of 735 Ill. Comp. Stat. 5/12–1006.

■■■■■ Even if the debtor's policy could be characterized as an "annuity," however, it would not necessarily qualify for exemption under § 12–1006. As set forth above, this section exempts a debtor's "interest in or right to receive" pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan,

> *if the plan is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986[.]*

735 Ill. Comp. Stat. 5/12–1006(a) (emphasis added). The emphasized language modifies the preceding phrases including, for present purposes, "annuities." To be eligible for exemption under § 12–1006, then, an annuity must come within the Internal Revenue Code provisions for tax-qualified retirement plans.

of death benefits, the policy, strictly speaking, is a "universal life" rather than a "whole life" policy.

In this case, the applicable provisions of the Internal Revenue Code ("I.R.C.") are set forth in 26 U.S.C. § 408, which establishes individual retirement accounts and individual retirement annuities, respectively.[7] *See* I.R.C. § 408(a)–(b). Section 408(b) enumerates the attributes necessary for an annuity to be tax-qualified as an "individual retirement annuity." These attributes include limitations on the nature and amount of premiums to be paid and restrictions on the transferability of the contract and forfeitability of the owner's interest. I.R.C. § 408(b)(1)–(4). To the extent a retirement annuity possesses these qualifying attributes, the Internal Revenue Code provides special tax treatment for contributions to and distributions from such annuity.

While § 12–1006 requires only that a retirement plan be "intended in good faith to qualify" under applicable tax provisions in order to be exempt under Illinois law, the debtor in this case has made no attempt to show how her purported annuity qualifies for tax-advantaged treatment under § 408(b).[8] Rather, in response to the trustee's argument that the annuity provision of her policy was merely an option for receiving proceeds under her insurance policy, the debtor asserted that, "in her mind," she entered into the policy "for purposes of retirement." Notably, despite the specific reference in § 12–1006 to tax code provisions governing retirement plans, the debtor asserted only that the policy was "intended for retirement," not that it was intended to qualify as a retirement plan under the Internal Revenue Code.

Section 12–1006, like exemption statutes generally, is to be construed liberally to further the legislative purpose of affording the debtor a fresh start. However, even under a liberal construction, § 12–1006 cannot be extended to protect whatever a debtor unilaterally chooses to claim as intended for retirement purposes. Rather, in the absence of any showing that the debtor intended her policy to qualify as a retirement plan under the Internal Revenue Code, the debtor has failed to show that the policy at issue constitutes a retirement plan exempt under § 12–1006(a).

For the reasons stated, the Court finds that the debtor's policy constitutes, not a retirement annuity exemptible under § 12–1006, but a policy of insurance. The debtor's insurance policy is not exempt under either 735 Ill. Comp. Stat. 5/12–1001(f) or 735 Ill. Comp. Stat. 5/12–1006. Accordingly, the Court will sustain the trustee's objection to the debtor's claim of exemption.

---

**7.** Individual retirement accounts and annuities are a subclass of a broader group of investment vehicles known as "individual retirement plans." *See* I.R.C. § 7701(a)(37).

**8.** While the burden of proof initially rested with the trustee as the party objecting to the debtor's claim of exemption, *see* Fed. R. Bankr.P. 4003(c), once the trustee offered the certificate, policy, and application to show that nothing therein indicated it constituted a retirement plan or annuity, the burden shifted to the debtor to establish that the policy was intended as a tax-qualified retirement plan under applicable provisions of the Internal Revenue Code.